**TRANSAMERICAN NATURAL GAS CORPORATION, Relator,**

v.

**Hon. William R. POWELL, Judge of the 80th District Court of Harris County, Texas, Respondent.**

No. C–9294.

Supreme Court of Texas.

June 19, 1991.

James Kronzer, Don Henderson, Robert V. Holland, Jr., John C. Nabors, Karen Zuckerman, Bill Jones, Kenneth E. McKay and Joe H. Reynolds, Houston, for relator.

Michael C. Feehan, Beverly Arleen Sandifer, G. Byron Sims, Daniel J. Kasprzak, Jonathan C.S. Cox, Ann Ryan Robertson and Donald F. Hawbaker, Houston, for respondent.

## OPINION

HECHT, Justice.

In this original mandamus proceeding, TransAmerican Natural Gas Corporation seeks to compel the Hon. William R. Powell, Judge of the 80th District Court, to set aside his orders imposing sanctions for discovery abuse. The district court struck TransAmerican's pleadings, dismissed its action against Toma Steel Supply, Inc., and granted Toma an interlocutory default judgment on its counterclaim against TransAmerican, reserving for trial only the amount of damages due Toma. We conditionally grant the writ of mandamus.

### I

The underlying case is a complex, multiparty action arising out of Toma's sale of allegedly defective pipe casing to TransAmerican. TransAmerican withheld payment for the casing, apparently some $2.3 million, and sued Toma in April 1987 for damages allegedly caused by its use. Toma counterclaimed for $52 million damages resulting from TransAmerican's refusal to pay for the casing. Numerous other parties also joined in the litigation.

On July 3, 1988, the district court issued a docket control order pursuant to Rule 166

of the Texas Rules of Civil Procedure, which set a discovery cutoff date of April 3, 1989. The order allowed discovery to be conducted beyond that date only upon agreement of the parties.

On March 7, 1989, Toma noticed the deposition of TransAmerican's president, K. Craig Shephard, to take place March 16. Two days later TransAmerican's counsel, who at that time was one of the attorneys in its legal department, telephoned Toma's counsel to inform him that Shephard could not be available on March 16 because of a previously scheduled deposition in another case. When counsel could not agree on another date for Shephard's deposition, TransAmerican filed a motion for protection to quash the deposition notice and postpone the deposition. The motion stated that it would be submitted to the trial court for ruling on March 17.[1] However, the trial court did not rule on the motion on that date.

Beginning April 3, the deadline set by the district court for completion of discovery, the parties' smoldering discovery problem started to flare. On that date, counsel for TransAmerican and Toma agreed that Shephard would be deposed after April 10 on a date to be agreed upon. Despite this understanding, counsel again failed to agree upon a date, and on April 19 Toma noticed Shephard's deposition for May 2 without TransAmerican's consent. On April 20, upon receipt of this second deposition notice, TransAmerican's counsel wrote a letter to Toma's counsel informing him that Shephard would not be available May 2 because, as before, he already had a deposition in another matter scheduled for that day. Toma's counsel replied by letter that he would not agree to reschedule the deposition. On April 27, TransAmerican reset the date for submission of its motion for protection to the trial court for ruling to May 12. By this time, of course, the motion was moot, and it is not apparent why TransAmerican continued to seek a ruling. TransAmerican did not move the trial court to postpone the May 2 deposition.

Also on April 27, Shephard's other deposition scheduled for May 2 was cancelled, leaving him available to be deposed by Toma. However, TransAmerican's counsel did not advise Toma's counsel that Shephard's schedule had changed so that he could be deposed on May 2 after all, nor did Shephard appear on May 2 as noticed. TransAmerican ascribes its failure to produce Shephard for deposition to miscommunication concerning his schedule changes between attorneys in its legal department. Toma alleges that Shephard's failure to appear was purposeful and part of TransAmerican's intentional obstruction of the discovery process.

On May 8, Toma filed a response to TransAmerican's March 14 motion for protective order, even though it acknowledged that that motion was moot. Toma included in its response, however, a motion for sanctions against TransAmerican based on Shephard's failure to appear at the May 2 deposition. In return, TransAmerican filed its own sanctions motion on May 11, urging that Toma's motion for sanctions was itself an abuse of the discovery process. Toma's and TransAmerican's motions for sanctions both stated that they would be submitted to the court for ruling on May 12, the date set for submission of TransAmerican's original motion for protection.

On May 12, without hearing oral argument,[2] the district court signed an order

---

1. The local rules governing civil cases in Harris County provide: "Motions shall state a date of submission which shall be at least 10 days from filing, except on leave of court. The motion will be submitted to the court for ruling on that date or later." Rule 3.3.2, Local Rules of the Civil Trial Division of the Harris County District Courts (1987). The March 17 submission date stated in TransAmerican's motion was only three days from the date of filing of the motion and the day after the deposition was scheduled.

2. Rule 3.3.4 of the Local Rules of the Civil Trial Division of the Harris County District Courts (1987) allows any party to request oral argument on a motion if the party "views it as necessary." Neither TransAmerican nor Toma

granting Toma's motion for sanctions and striking TransAmerican's pleadings in their entirety. TransAmerican moved for reconsideration, which the district court denied after hearing argument of counsel but refusing to hear any evidence. Based upon his May 12 order striking TransAmerican's pleadings, the district court issued an order on October 6 dismissing TransAmerican's action with prejudice, rendering an interlocutory default judgment against TransAmerican and in favor of Toma on its counterclaim, and setting the case for trial solely on the issue of the damages to be awarded Toma.

TransAmerican sought mandamus relief from the court of appeals to compel the district court to set aside his May 12 and October 6 orders. A divided court of appeals denied TransAmerican leave to file its petition for writ of mandamus in an unpublished per curiam opinion.[3] TransAmerican then moved for leave to file its petition in this Court. We granted the motion in order to review the propriety of the discovery sanctions imposed by the district court.

## II

 The sanctions imposed by the district court are among those authorized for various discovery abuses under Rule 215 of the Texas Rules of Civil Procedure. The district court did not specify what provision of Rule 215 it relied upon. The portions of the rule applicable to the circumstances here are paragraphs 2(b)(5) and 3. Paragraph 2(b)(5) provides in part:

> If a party or an officer ... of a party ... fails to comply with proper discovery requests or to obey an order to provide or permit discovery, ... the court in which the action is pending may, after notice and hearing, make such orders in regard to the failure as are just, and among others the following:
>
> . . . . .
>
> (5) An order striking out pleadings or parts thereof, ... or dismissing with or without prejudice the action or proceedings or any part thereof, or rendering a judgment by default against the disobedient party....

At the time of the district court's rulings, paragraph 3 of Rule 215 stated in part:

> If the court finds a party is abusing the discovery process in seeking, making or resisting discovery ..., then the court in which the action is pending may impose any sanction authorized by paragraphs (1), (2), (3), (4), (5), and (8) of paragraph 2b of this rule. Such order of sanction shall be subject to review on appeal from the final judgment.[4]

---

appears to have requested oral argument on any of their motions before May 12.

**3.** Because of its brevity, we reproduce the court of appeals' opinion below rather than order it published as we would ordinarily do when granting relief:

### OPINION

Relator asks us to order respondent to withdraw his order imposing sanctions. This is a breach of contract case involving the failure of defective casing on gas wells. Relator filed suit against Toma Steel Supply, Inc. Toma filed a counterclaim against relator. Toma filed numerous third party claims against suppliers. Those suppliers have filed cross actions against Toma.

On May 12, 1989, respondent granted Toma's motion for sanctions against relator, striking relator's pleadings for the failure of its president, K. Craig Shephard, to appear for a May 2, 1989, deposition. Relator argues

respondent's action constitutes an abuse of discretion.

A writ of mandamus is not properly granted in an ordinary case as relief from sanctions. *Street v. Second Court of Appeals,* 715 S.W.2d 638, 639–640 (Tex.1986).

The motion for leave is overruled.

PER CURIAM

Motion for leave to file petition for writ of mandamus overruled June 16, 1989, and Opinion filed June 29, 1989.

Panel consists of Chief Justice J. Curtiss Brown and Justices Junell and Draughn.

Do Not Publish. Tex.R.App.P. 90.

Justice Draughn would grant.

**4.** Rule 215, paragraph 3 was amended, effective September 1, 1990, to require that sanctions be imposed only after notice and hearing and only as "appropriate". (Similar amendments were made at the same time in Rule 13, Tex.R.Civ.P.) However, the requirement that sanctions be appropriate was implicit in the rule before the

Both paragraphs leave the choice of sanctions to the sound discretion of the trial court. *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex.1986). However, paragraph 2(b) explicitly requires that any sanctions imposed be "just". By referring to paragraph 2(b), paragraph 3 incorporates the same requirement. Thus, whether the district court imposed sanctions under paragraph 2(b) or paragraph 3, we consider whether those sanctions were just.[5] *See Bodnow*, 721 S.W.2d at 840.

█ In our view, whether an imposition of sanctions is just is measured by two standards. First, a direct relationship must exist between the offensive conduct and the sanction imposed. This means that a just sanction must be directed against the abuse and toward remedying the prejudice caused the innocent party. It also means that the sanction should be visited upon the offender. The trial court must at least attempt to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both. This we recognize will not be an easy matter in many instances. On the one hand, a lawyer cannot shield his client from sanctions;

a party must bear some responsibility for its counsel's discovery abuses when it is or should be aware of counsel's conduct and the violation of discovery rules. On the other hand, a party should not be punished for counsel's conduct in which it is not implicated apart from having entrusted to counsel its legal representation. The point is, the sanctions the trial court imposes must relate directly to the abuse found.

█ Second, just sanctions must not be excessive. The punishment should fit the crime. A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes. It follows that courts must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance.

█ These standards set the bounds of permissible sanctions under Rule 215 within which the trial court is to exercise sound discretion.[6] The imposition of very severe sanctions is limited, not only by these standards, but by constitutional due process. The sanctions the district court imposed against TransAmerican are the most dev-

---

amendment. *Koslow's v. Mackie*, 796 S.W.2d 700, 703 n. 1 (Tex.1990). In the context of Rule 215, "appropriate" and "just" are equivalent standards.

5. TransAmerican contends that Toma's notice to take Shephard's deposition on May 2 was not a "proper" discovery request under Rule 215, paragraph 2(b) because it issued after the discovery cutoff date set by Judge Powell. Toma responds that its request was proper because TransAmerican agreed that Shephard could be deposed after the cutoff, as permitted by the district court's scheduling order. TransAmerican answers even if there were a binding agreement to depose Shephard after the cutoff, no date was ever agreed to.

TransAmerican also contends that the hearing required by Rule 215, paragraph 2(b) is an oral hearing, not merely a submission of the issue on written motion and response, and that it was denied such a hearing before the imposition of sanctions. Further, TransAmerican argues that the notice required by Rule 215, paragraph 2(b) is at least ten days' notice, and that Toma's motion for sanctions was filed only four days before the district court ruled on it. Toma responds that TransAmerican did not request an

oral hearing, that an oral hearing was not necessary and is not required by the rule, and that in any event, TransAmerican received an oral hearing on its motion to reconsider, thus satisfying any requirement of the rule. Toma also argues that Rule 215, paragraph 2(b), requires only reasonable notice, and that four days' notice to TransAmerican in this case was reasonable because TransAmerican was able to respond fully to the motion before the district court ruled.

Our resolution of the matter before us does not require that we address these arguments, and we express no view on any of them.

6. JUSTICE GONZALEZ' concurring opinion sets out guidelines for assessing sanctions which have been identified in the context of applying Rule 11, FED.R.CIV.P. *Post*, at 920–922. Our analysis of this case does not require us to consider whether those factors or others are appropriate considerations in imposing sanctions. However, we do subscribe to the principle, inherent in the effort to state guidelines, that the trial court's discretion in assessing sanctions must be guided by a reasoned analysis of the purposes sanctions serve and the means of accomplishing those purposes.

astating a trial court can assess against a party. When a trial court strikes a party's pleadings and dismisses its action or renders a default judgment against it for abuse of the discovery process, the court adjudicates the party's claims without regard to their merits but based instead upon the parties' conduct of discovery. "[T]here are constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause." *Societe Internationale v. Rogers,* 357 U.S. 197, 209–10, 78 S.Ct. 1087, 1094, 2 L.Ed.2d 1255 (1958), *citing Hammond Packing Co. v. Arkansas,* 212 U.S. 322, 350–51, 29 S.Ct. 370, 379–80, 53 L.Ed. 530 (1909), *and Hovey v. Elliott,* 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215 (1897); *accord Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 705–06, 102 S.Ct. 2099, 2105–06, 72 L.Ed.2d 492 (1982). Discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit. *Insurance Corp. of Ireland,* 456 U.S. 694, 705–06, 102 S.Ct. 2099, 2105–06; *Rogers,* 357 U.S. at 209–10, 78 S.Ct. at 1094; *Hammond Packing,* 212 U.S. at 350–51, 29 S.Ct. at 379–80. However, if a party refuses to produce material evidence, despite the imposition of lesser sanctions, the court may presume that an asserted claim or defense lacks merit and dispose of it. *Insurance Corp. of Ireland,* 456 U.S. at 705–06, 102 S.Ct. at 2105–06. Although punishment and deterrence are legitimate purposes for sanctions, *National Hockey League v. Met-*

*ropolitan Hockey Club, Inc.,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (per curiam); *Bodnow Corp. v. City of Hondo,* 721 S.W.2d at 840 they do not justify trial by sanctions, *Hammond Packing,* 212 U.S. at 350–51, 29 S.Ct. at 379–80; *Hovey,* 167 U.S. at 413–14, 17 S.Ct. at 843. Sanctions which are so severe as to preclude presentation of the merits of the case should not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules. *See National Hockey League,* 427 U.S. at 642–643, 96 S.Ct. at 2780–81.[7]

■ In the present case, it is not clear whether TransAmerican or its counsel or both should be faulted for Shephard's failure to attend his deposition. Moreover, there is nothing in the record to indicate that the district court considered imposition of lesser sanctions or that such sanctions would not have been effective. If anything, the record strongly suggests that lesser sanctions should have been utilized and perhaps would have been effective. The district court could have ordered Shephard's deposition for a specific date and punished any failure to comply with that order by contempt or another sanction. He also could have taxed the costs of the deposition against TransAmerican and awarded Toma attorney fees. The range of sanctions available to the district court under Rule 215 is quite broad. The district court dismissed TransAmerican's claims against Toma and rendered default judgment for Toma on its counterclaim solely because, as the record before us establishes, TransAmerican's president failed to present himself for his deposition.[8] Nothing in the

---

7. *National Hockey League* cites *Rogers* but not *Hammond Packing,* and does not refer to the rule of the latter that discovery sanctions cannot be used to dispose of the merits of a claim or defense unless the offending party's withholding of evidence warrants a presumption that its claim or defense is without merit. Nevertheless, the conduct sanctioned in *National Hockey League* was so egregious that it clearly would have justified the same ultimate sanctions under *Hammond Packing.* The *Hammond Packing* rule is not in doubt. That it has not been

abandoned is further demonstrated in *Insurance Corp. of Ireland,* which came after *National Hockey League* and reasserted the rule of *Hammond Packing.*

8. Toma's motion for sanctions was based solely upon Shephard's failure to attend his deposition. As Toma itself stated in its response to TransAmerican's motion to refile its pleadings after they were struck: "[O]n May 12, 1989, the Court granted [Toma's] Motion for Sanctions against [TransAmerican] for TransAmerican's

record before us even approaches justification for so severe a sanction.[9]

We recognize that we affirmed a similar sanction in *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). In that case the trial court struck defendant's answer and rendered a default judgment against it based upon the failure of defendant and his employees to appear for their depositions on three separate occasions without explanation. Even assuming that *Downer* was correctly decided, the instant case does not show the same pattern of abuse present in *Downer*. Furthermore, *Downer*'s approval of the sanction of default judgment was specifically based upon the facts of that case, and the holding in that case is limited to those facts. Rendition of default judgment as a discovery sanction ought to be the exception rather than the rule.

There are cases, of course, when striking pleadings, dismissal, rendition of default and other such extreme sanctions are not only just but necessary. *See National Hockey League,* 427 U.S. at 642, 96 S.Ct. at 2780. In this case, however, the record before us establishes that the severe sanctions the district court imposed against TransAmerican were manifestly unjust in violation of Rule 215.

### III

■■■■ We next consider whether TransAmerican has an adequate remedy by appeal. If it does, then the writ of mandamus must be denied. *State v. Walker,* 679 S.W.2d 484, 485 (Tex.1984). Rule 215, paragraph 3 states that orders imposing discovery sanctions "shall be subject to review on appeal from the final judgment." Today we have held in *Braden v. Downey,* 811 S.W.2d 922 (1991), that sanctions should not be imposed in such a way that effective appellate review is thwarted. Whenever a trial court imposes sanctions which have the effect of adjudicating a dispute, whether by striking pleadings, dismissing an action or rendering a default judgment, but which do not result in rendition of an appealable judgment, then the eventual remedy by appeal is inadequate. Specifically, in this case TransAmerican does not have an adequate remedy by appeal because it must suffer a trial limited to the damages claimed by Toma. The entire conduct of the litigation is skewed by the removal of the merits of TransAmerican's position from consideration and the risk that the trial court's sanctions will not be set aside on appeal. Resolution of matters in dispute between the parties will be influenced, if not dictated, by the trial court's determination of the conduct of the parties during discovery. Some award of damages on Toma's counterclaim is likely, leaving TransAmerican with an appeal, not on whether it should have been liable for those damages, but on whether it should have been sanctioned for discovery abuse. This is not an effective appeal.

refusal to agree to a date certain for Mr. Craig Shephard's deposition and for the failure of its President, Mr. Craig Shephard, to appear for a properly noticed deposition on May 2, 1989, and struck TransAmerican's pleadings in their entirety." Notwithstanding this rather clear statement in the trial court, during this mandamus proceeding Toma has suggested that the district court properly sanctioned TransAmerican because it had abused the discovery process on other occasions. TransAmerican disputes Toma's assertions. While the district court would have been entitled to consider a pattern of discovery abuse in imposing sanctions, the record does not reveal the existence of any such pattern, Toma did not complain of one, and the district court does not appear to have found one.

**9.** The district court made no findings to support the sanctions imposed. Rule 215 does not re-

quire a trial court to make findings before imposing discovery sanctions, and we do not add such a requirement here. We note only that we do not have the benefit of any explanation by the district court for the severity of its ruling. It would obviously be helpful for appellate review of sanctions, especially when severe, to have the benefit of the trial court's findings concerning the conduct which it considered to merit sanctions, and we commend this practice to our trial courts. *See Thomas v. Capital Security Services, Inc.,* 836 F.2d 866, 882–883 (5th Cir.1988). Precisely to what extent findings should be required before sanctions can be imposed, however, we leave for further deliberation in the process of amending the rules of procedure.

We therefore hold that when a trial court imposes discovery sanctions which have the effect of precluding a decision on the merits of a party's claims—such as by striking pleadings, dismissing an action, or rendering default judgment—a party's remedy by eventual appeal is inadequate, unless the sanctions are imposed simultaneously with the rendition of a final, appealable judgment. If such an order of sanctions is not immediately appealable, the party may seek review of the order by petition for writ of mandamus. Although not every such case will warrant issuance of the extraordinary writ, this case does. TransAmerican's remedy by appeal from a final judgment eventually to be rendered in Toma's favor is inadequate.

\*　　\*　　\*

Accordingly, we hold that TransAmerican is entitled to the mandamus relief it seeks. We are confident that Judge Powell will vacate his orders of May 12 and October 6, after which he may conduct further proceedings consistent with this opinion. Our writ of mandamus will issue only in the event he fails promptly to comply.

Concurring opinions by GONZALEZ and MAUZY, JJ.

GONZALEZ, Justice concurring.

I concur with the court's opinion and judgment. The sanction in this case was clearly out of proportion to the offense committed by relator and the opinion appropriately disposes of the present controversy. However, neither our rules nor the court have set guidelines for imposing sanctions. They envision a large degree of discretion vested in the trial court and innovation should not be discouraged in attempting to fashion an appropriate sanction. However, trial judges should not be trigger happy. They should first issue orders compelling discovery. In all but the most egregious circumstances, other lesser sanctions should be tried first before imposing the ultimate sanction of the "death penalty" (dismissal of pleadings). Cases should be won or lost on their merits, not on discovery or sanctions gamesmanship. Thus I write separately to offer additional guidance to the bench and bar.

In assessing sanctions under Rule 215 of the Texas Rules of Civil Procedure, the punishment must fit the crime. Furthermore, a sanction should be a function of both the facts presented and the purpose of the rule the court is enforcing. G. JOSEPH, SANCTIONS: THE FEDERAL LAW OF LITIGATION ABUSE § 16 (1989). If this is not clear from the record, the trial court is more apt to be second guessed by the appellate courts.

The Litigation Section of the American Bar Association promulgated the following standards and guidelines to be considered when determining whether to assess sanctions under Federal Rule 11:

a. the good faith or bad faith of the offender;

b. the degree of willfulness, vindictiveness, negligence, or frivolousness involved in the offense;

c. the knowledge, experience, and expertise of the offender;

d. any prior history of sanctionable conduct on the part of the offender;

e. the reasonableness and necessity of the out-of-pocket expenses incurred by the offended person as a result of the misconduct;

f. the nature and extent of prejudice, apart from out-of-pocket expenses, suffered by the offended person as a result of the misconduct;

g. the relative culpability of client and counsel, and the impact on their privileged relationship of an inquiry into that area;

h. the risk of chilling the specific type of litigation involved;

i. the impact of the sanction on the offender, including the offender's ability to pay a monetary sanction;

j. the impact of the sanction on the offended party, including the offended person's need for compensation;

k. the relative magnitude of sanction necessary to achieve the goal or goals of the sanction;

l. burdens on the court system attributable to the misconduct, including consumption of judicial time and incurrence of juror fees and other court costs;

m. the degree to which the offended person attempted to mitigate any prejudice suffered by him or her;

n. the degree to which the offended person's own behavior caused the expenses for which recovery is sought....[1]

American Bar Association, *Standards and Guidelines for Practice Under Rule 11 of the Federal Rules of Civil Procedure, reprinted in* 121 F.R.D. 101 (1988).

I recognize that Federal Rule 11 is not comparable to Rule 215 of Texas Rules of Civil Procedure and that Federal Rule 11 does not specify the types of sanctions that may be imposed. However, we do not have to re-invent the wheel. In my opinion, the ABA guidelines developed for determining when to assess sanctions under Federal Rule 11 are instructive whenever sanctions are imposed or denied under Texas Rule 215.

As the court notes, the range of sanctions available to a trial court under Rule 215 is quite broad. Some of these sanctions include:

(1) A reprimand of the offender;[2]

(2) Mandatory continuing legal education;

(3) A fine;[3]

(4) An award of reasonable expenses, including reasonable attorney's fees, incurred as a result of the misconduct;

(5) Reference of the matter to the appropriate attorney disciplinary or grievance authority;[4]

(6) An order precluding the introduction of certain evidence;

(7) An order precluding the litigation of certain issues;

(8) An order precluding the litigation of certain claims or defenses;

(9) Dismissal of the action or entry of a

---

1. The omitted guidelines are specifically tailored to address the concerns of Federal Rule of Civil Procedure 11 and therefore are not appropriate for inclusion in this general discussion of sanctions.

2. Although this is typically the least serious sanction available, some courts have attempted to use the reprimand as a method of embarrassing the lawyer who has committed the offense. For example the court could require the reprimanded lawyer to provide a certified copy of the reprimand order to the members of his law firm. *See Huettig & Schromm, Inc. v. Landscape Contractors Council*, 582 F.Supp. 1519, 1522–23 (N.D.Cal.1984), *aff'd*, 790 F.2d 1421 (9th Cir.1986).

3. If a monetary fee is imposed, other factors should be considered by the trial court, including:

(1) The time and labor involved;
(2) The novelty and difficulty of the questions involved;
(3) The skill requisite to perform the legal service properly;
(4) The customary fee;
(5) Whether the fee is fixed or contingent;

(6) Time limitations imposed by the client or the circumstances;
(7) The amount involved and the results obtained;
(8) The experience, reputation and ability of the attorneys; and
(9) Awards in similar cases;

*ABA Standards and Guidelines*, 121 F.R.D. at 125–26.

The authority of a trial judge to assess a monetary fine as a sanction for abuse of the discovery process was disputed in *Owens–Corning Fiberglas Corp. v. Caldwell*, 807 S.W.2d 413, 415 (Tex.App.—Houston [1st Dist.] 1991, orig. proceeding). The court of appeals held that the trial court had no such authority under rule 215(3). However, in *Braden v. Downey*, 811 S.W.2d 922 (Tex.1991, orig. proceeding), we held that the trial judge did have such authority. A few days ago, the United States Supreme Court held that federal courts had inherent power to impose monetary sanctions on a litigant for bad-faith conduct. *Chambers v. Nasco, Inc.*, — U.S. ——, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

4. Sanctionable conduct may not necessarily be an ethical violation, however. *See Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1538–39 (9th Cir.1986).

default judgment.[5]

*ABA Standards and Guidelines,* 121 F.R.D. at 124.

Sanctions are tools to be used by a court to right a wrong committed by a litigant. Any given sanction should be designed to accomplish that end. Sanctions can be compensatory, punitive or deterrent in nature. *See* G. JOSEPH, SANCTIONS: THE FEDERAL LAW OF LITIGATION ABUSE § 16 (1989). The court should assess the type of sanction most likely to prevent a recurrence of the offending conduct. The court should also consider the relative culpability of the counsel and client when selecting the appropriate sanction. *See, e.g., Westmoreland v. CBS, Inc.,* 770 F.2d 1168, 1178–79 (D.C.Cir.1985).

The foregoing guidelines are simply suggestions to guide a trial court in its struggle to make the punishment fit the crime.

MAUZY, Justice, concurring.

I concur in the Court's judgment, but write separately to outline the guidelines which I feel are necessary to explain the parameters of our decision today. Whether or not a sanction is appropriate must be determined by the particular facts of the individual case. In order to determine the appropriate sanctions in each case, the trial court should engage in a three-part inquiry. First, the trial court must resolve the question of whether the offending conduct actually constitutes an abuse of the discovery process. Second, the court must determine who is actually responsible for the offensive conduct and the extent of their culpability. Third, the court must determine what sanctions would be appropriate under the circumstances. The trial court should impose sanctions only upon those who actually abuse the discovery process and only in a manner consistent with the goals of deterring such conduct and correcting the resulting injustice. Courts must strike a careful balance in imposing sanctions. On one hand, the trial court should make clear that abuse of the discovery process is reprehensible and completely contrary to the orderly administration of justice. On the other hand, the trial court must avoid rulings that would serve to chill vigorous advocacy. In making its determination as to what sanctions would be appropriate in a particular case, the court should also consider the offending behavior in terms of the duty owed the court system. Attorneys, as officers of the court, should be held to a higher standard than others. Parties, however, should only be sanctioned for conduct in which they are actually implicated. For example, a party which, by virtue of contract, incapacity or incompetency, or the very nature of the lawsuit, has only limited control of his attorney and the course of litigation, should not be sanctioned for actions over which it had no control. Courts should strive to curb abuses of the judicial process by litigants and their attorneys, and should impose sanctions upon those who abuse the process in order to deter such misconduct. However, trial judges have an obligation, when imposing sanctions, to ensure that the punishment must fit the crime and is imposed only upon the actual offender or offenders.

---

5. These remedies are essentially equivalent in degree depending on whether the plaintiff or the defendant is the offending party.