**WELEX, A DIVISION OF HALLIBURTON COMPANY, Appellant,**

v.

**Jerry Wayne BROOM, Appellee.**

No. 04–89–00377–CV.

Court of Appeals of Texas, San Antonio.

Jan. 8, 1992.

Rehearing Denied Feb. 21, 1992.

William Powers, Jr., Austin, Marie R. Yeates, Penelope E. Nicholson, R. Glen Rigby, Eva C. Ramos, Harry M. Reasoner, Linda K. McCloud, Vinson & Elkins, Houston, M.W. Meredith, Jr., Meredith, Donnell & Abernethy, Corpus Christi, W. James Kronzer, Law Offices of W. James Kronzer, Houston, for appellant.

Arnulfo Gonzalez, Jr., Laredo, Russell H. McMains, Kimberley Hall Seger, McMains & Constant, Corpus Christi, for appellee.

Before CHAPA, BIERY and GARCIA, JJ.

## OPINION

CHAPA, Justice.

This cause originated as an appeal from a judgment entered against appellant Welex, a Division of Halliburton Company. Appellee, Jerry Wayne Broom,[1] brought a negligence action against Welex and Transamerican Natural Gas. Prior to trial, the trial court sanctioned Welex for discovery abuse by granting a defaulted judgment on the liability issue. Transamerican then settled with the appellee. At trial, evidence

1. Hereinafter "Broom".

2. "Death penalty sanction" is a term adopted by the legal community to describe a sanction imposed by the trial court which, in effect, elimi-

was heard on damages and on the comparative negligence of Broom, Transamerican and appellant. A jury found Broom not negligent, allocated comparative negligence at 1% on Transamerican and 99% on Welex, and awarded Broom over $2 million for his injuries.

■ On January 16, 1991, after applying the then existing appropriate standard of review, this court affirmed, holding among other things that the appellant had failed in its burden of establishing that the trial court abused its discretion in imposing the "death penalty"[2] sanction against it. *Welex v. Broom*, 806 S.W.2d 855 (Tex.App.—San Antonio, 1991), *judgment vacated by* 816 S.W.2d 340 (Tex.1991). On October 16, 1991, after establishing a new standard of review for such cases, the Texas Supreme Court, without addressing the merits of appellants application for writ of error, remanded the case to this court in order to provide us with "the opportunity to reconsider the [sanction's] rulings of which [appellant] complains ... in light of [the supreme court's] recent opinion in *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913 (Tex.1991)." *Welex v. Broom*, 816 S.W.2d 340 (Tex.1991). This action by the supreme court was obviously due to the fact that at the time this court issued its opinion on January 16, 1991, the new standard of review in such cases did not exist, and could not, therefore, have been applied. Likewise, it should also be noted that when the trial court imposed the discovery abuse sanctions herein involved, the requirements thereafter imposed upon the trial court in *TransAmerican*, 811 S.W.2d 913, did not exist and were, therefore, unknown to and not required of the trial court.

■ Thus, the dispositive issue on remand is whether the trial court committed reversible error in imposing unfair "death penalty" sanctions against appellant for discovery abuse, as measured by the stan-

nates a claim, counterclaim, or defense and precludes a decision on the merits of the party's claim, counterclaim, or defense.

dard imposed by the supreme court in *TransAmerican*. *Id.*

Prior to October 16, 1991, the general abuse of discretion standard was the appropriate standard of review to be applied in appeals involving discovery abuse sanction. However, in *Transamerican*, 811 S.W.2d 913, the Texas Supreme Court established limitations on the trial court's exercise of sound discretion in imposing "death penalty" sanctions for discovery abuse. In *TransAmerican*, the supreme court granted mandamus relief to a party whose pleadings were struck, whose cause of action was dismissed, and against whom a default judgment was granted based on a counterclaim, reserving only the issue of damages. *Id.* The sanctions had been imposed by the trial court upon the relator as a result of discovery abuse. The supreme court held that mandamus lies:

> when a trial court imposes discovery sanctions which have the effect of precluding a decision on the merits of a party's claims—such as by striking pleadings, dismissing an action, or rendering default judgment—a party's remedy by eventual appeal is inadequate, unless the sanctions are imposed simultaneously with the rendition of a final, appealable judgment.

*Id.* at 920.

The court further established standards which "set the bounds of permissible sanctions under Rule 215 within which the trial court is to exercise sound discretion ..." in granting a just sanction order. *Id.* at 917 (footnote omitted). The court held that in order for a sanction to be just, 1) it "must be directed against the abuse and toward remedying the prejudice caused the innocent party", which means that "the sanction should be visited upon the offender" requiring "the trial court [to] at least attempt to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both"; 2) and, it "must not be excessive" which means that "[t]he punishment should fit the crime" requiring that "courts must consider the availability of less stringent sanctions and whether such lesser sanctions would fully

promote compliance". *Id.* Pertaining to "death penalty" sanctions, the court stated:

> [w]hen a trial court strikes a party's pleadings and dismisses its action or renders a default judgment against it for abuse of the discovery process, the court adjudicates the party's claims without regard to their merits but based instead upon the parties' conduct of discovery. '[T]here are constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause.'

*Id.* at 918 (citations omitted).

The court also made the following recommendation in order to aid the appellate courts in their efforts to determine the propriety of the sanctions imposed:

> The district court made no findings to support the sanctions imposed. Rule 215 does not require a trial court to make findings before imposing discovery sanctions, and we do not add such a requirement here. We note only that we do not have the benefit of any explanation by the district court for the severity of its ruling. It would obviously be helpful for appellate review of sanctions, especially when severe, to have the benefit of the trial court's findings concerning the conduct which it considered to merit sanctions, and we commend this practice to our trial courts....

*Id.* at 919 n. 9 (citations omitted).

In *Braden v. Downey*, 811 S.W.2d 922 (Tex.1991), the supreme court granted mandamus relief to a party and its attorney who had been sanctioned by the trial court for discovery abuse. The trial court had ordered the relator to pay the amount of $10,000 to the party seeking discovery, and the relator's attorney was ordered to perform ten hours of community service. The deadlines for the sanctions imposed both on the relator and the attorney preceded the conclusion of the litigation.

Including the exclusion of essential evidence and defenses under the standard established in *TransAmerican*, 811 S.W.2d 913, the supreme court stated:

Sanctions which terminate or inhibit the presentation of the merits of a party's claims for decision are authorized by Rule 215. These include *exclusion of essential evidence,* striking pleadings, dismissal and default. Rule 215, paragraph 2b(3), (4), (5). The effect of such sanctions is to adjudicate claims or *defenses,* not on their merits, but on the manner in which a party or his attorney has conducted discovery. We recognize that severe sanctions are sometimes necessary to prevent an abusive party from thwarting the administration of justice by concealing the merits of a case. However, *such sanctions must be reserved for circumstances in which a party has so abused the rules of procedure, despite imposition of lesser sanctions, that the party's position can be presumed to lack merit and it would be unjust to permit the party to present the substance of that position before the court. TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913 (Tex. 1991).

*Braden,* 811 S.W.2d at 929 (emphasis added).

With regards the imposition of monetary sanctions, the supreme court stated that "[i]f the imposition of monetary sanctions threatens a party's continuation of the litigation, appeal affords an adequate remedy only if payment of the sanctions is deferred until final judgment is rendered and the party has the opportunity to supersede the judgment and perfect his appeal." *Id.* In this respect, the supreme court adopted the solution enunciated by the Fifth Circuit:

> We ... believe that the imposition of sanctions must not result in total, or even significant, preclusion of access to the courts.... However, if a district court imposes monetary sanctions that are made payable prior to the entry of a final appealable order, a litigant may suffer a substantial restriction on his access to the courts. Financially strapped because of the sanctions award, a litigant is unable to proceed with his case on the merits. To avoid this harsh, inequitable scenario, we conclude that *if a litigant contends that a monetary sanction*

*award precludes access to the court, the district judge must either (1) provide that the sanction is payable only at a date that coincides with or follows entry of a final order terminating the litigation; or (2) makes express written findings, after a prompt hearing, as to why the award does not have such a preclusive effect.* (Emphasis added.)

*Id.,* citing *Thomas v. Capital Sec. Serv., Inc.,* 836 F.2d 866, 882–883 n. 23 (5th Cir. 1988) and *Schaffer v. Iron Cloud, Inc.,* 865 F.2d 690, 691 (5th Cir.1989) (per curiam). Finally, the supreme court concluded that the trial court "must modify its order at least to allow" both relator and his attorney "an opportunity to appeal before such sanctions" are executed. *Braden,* 811 S.W.2d at 930.

The record reflects that suit was filed by appellee on March 5, 1987. On May 19, 1987, appellee sent its notice of intent to take the depositions of Van Hamilton and Roberto Martinez on July 2, 1987. The first discovery in the case took place on July 23, 1987, when four depositions were taken. Among the depositions taken on July 23rd was the deposition of Roberto Martinez, an employee of Welex. Mr. Martinez was partially deposed by appellee's attorney but the deposition was "recessed by agreement to be completed at a later date," because Martinez said that "he was just too tired and had put in a lot of work."

A pretrial conference was held on February 24, 1988. The agreed pretrial order provided, among other things: that discovery could continue until the day of trial; that appellee would provide a list of witnesses within forty-five (45) days before trial; and, that appellant would provide its list of witnesses within thirty (30) days before trial. The case was set for a trial date of October 11, 1988, with an alternative trial date of February 27, 1989. All attorneys later agreed to forgo the October 11, 1988 trial date.

On January 13, 1989, appellee noticed the depositions of various witnesses, including Martinez, for January 31st. Attached was a subpoena duces tecum requesting numerous documents, photographs, statements

and reports that were "in the possession, constructive possession, custody or control of the Defendant, its attorney(s) or anyone acting on their behalf." Appellant's counsel, however, claimed that his offices did not receive notice of the scheduled deposition until January 16th. Appellant's counsel stated that the deposition notices were misplaced in his office and that, consequently, he omitted to produce his witnesses on the 31st.

Appellee further served its first set of interrogatories, its second set of interrogatories and a request for production on appellant. Included in the request for production were approximately thirty-eight (38) of the very requests described in appellee's subpoena duces tecum that was served on the proposed deponents scheduled for January 31, 1989. On January 31, 1989, appellant filed a Motion for Protection alleging that "within six weeks of the trial date [appellee] has filed fourteen additional discovery documents, including extensive interrogatories ..., extensive Requests for Production ..." in addition to noticing numerous depositions. The motion was subsequently denied by the court.

On February 9, 1989, appellant filed its Second Motion for Protection and Motion for Sanctions, alleging that appellant had agreed that the three employees of appellant, Roberto Martinez, Ed Laycock and Walter Rouse, would be produced in the appellant's offices on February 8, 1989. Appellant argued that while the three employees had been produced, appellee's counsel refused to proceed with the deposition of Roberto Martinez after counsel learned that all of the documents described in appellee's notice of deposition had not been produced because Martinez "had no such documents, and had no possession, custody or control of such documents." [3] On February 10, 1989, appellee likewise filed its Motion for Judgment by Default and Second Motion for Sanctions based on the occurrence on February 8, 1989.

On February 16, 1989, a hearing on these motions was held, wherein the trial court granted a default judgment sanction against Welex on liability, thus limiting the trial on the merits to the issue of damages. On February 28, 1989, after a hearing, the trial court refused appellant's Motion for Reconsideration. Although the trial court could have considered all relevant factors in deciding to impose the default sanction, a review of the Motion for Reconsideration hearing reveals that the trial court failed to consider less stringent sanctions; that the sanctions were imposed primarily because appellant's attorney refused to permit the taking of the second deposition prior to the completion of the Martinez deposition on February 8, 1989 [4]; and, that the court totally refused to consider sanctions against appellant's attorney instead of the appellant.

The following remarks of the trial court made at the Motion for Reconsideration hearing clearly reflect the only other sanction the court considered besides the default judgment [5]:

3. In conjunction with Appellant's contention that Martinez "had no such documents, and had no possession, custody or control of such documents", appellant points to the record which supports that the absent documents, which caused all the problems with the Martinez deposition, were shortly thereafter provided by Welex in timely response to interrogatories of the appellee.

4. Without citing authority, counsel for appellant argued to the trial court and to this court that since TEX.R.CIV.P. 201(5) requires that "the witness shall remain in attendance from day to day until such deposition is begun and *completed*", appellant was justified in refusing to allow appellee to commence the deposition of the second witness without concluding the deposition of Martinez. (Emphasis added.) We are un-

able to find any authority which would justify either appellant's interpretation of the rule or appellant's refusal to permit the second deposition prior to completion of the first.

5. Although the record reflects that the trial court considered, as an alternative sanction, striking all three of appellant's witnesses involved in the February 8, 1989 altercation, this is not the type of lesser sanctions envisioned by the supreme court in *TransAmerican*, 811 S.W.2d 913. In *Braden*, 811 S.W.2d at 929, the supreme court broadened the application of the *TransAmerican* standard to include "exclusion of essential evidence" because, such a sanction had the effect of "adjudicating claims or defenses, not on their merits, but on the manner in which a party or his attorney has conducted

THE COURT: ... I think what transpired, I was trying to find a middle ground to sanction you for the conduct that appeared on the deposition and my initial response was to strike the witnesses and no [sic] allow you to present those witnesses. But that would have worked to the detriment of the codefendant, Transamerican, who urged that she wanted to present those witnesses. So there was no avenue that I could take other than to strike your pleadings and render a default judgment against your client ...

The following remarks, also made by the trial court at the Motion for Reconsideration hearing, clearly disclosed the reason the court granted the default judgment:

THE COURT: Mr. Meredith [appellant's attorney], before you go on to something else, I can well understand how reasonable legal minds can differ upon legal questions. What struck out in my mind at the time, and I don't mind telling you because I want you to address that, is the seeming intransigence in allowing the witness to be deposed after the impasse with the first one over not producing. That is what stuck in my mind. Let him take all the witnesses he wants and then we'll go to Court on motions for protective order subsequent to this. Rather than to take into your hands there and say, no, you're not going to take the other witnesses until you're finished with this one, that is what I thought created a very difficult and non-tenable [sic] situation which I thought should be sanctioned.

. . . .

THE COURT: That if you have the three witnesses there, let counsel do whatever he wants as far as taking the depositions and then if [sic] wants to bring them in again, then you ask for a protective order, and that way you don't place yourself in a situation for where you could be accused of abusing discovery process.

discovery". This record clearly reflects that the testimony of these witnesses was essential to

Nothing in the record indicates that Welex was responsible for or was even considered by the trial court to be responsible for anything that may have in any way caused the default judgment sanctions imposed against it by the trial court. Further, the following remarks by the trial court, made at the hearing on the motion for Reconsideration, clearly reflect that the court recognized that, in fact, the personality conflict that existed between the opposing attorneys contributed considerably, if not totally, to all the deposition problems including the final altercation which caused the default judgment:

THE COURT: ... I think what we have here again is that you've sort of evolved into a pattern that maybe you have a clash of personalities. I want you to get that behind you and let's see if you can, for the benefit of both of your clients, resolve some of these differences, and then I'll call your case immediately after lunch and I'll take up your Motion to Reconsider.

Nevertheless, the trial court refused to consider less stringent sanctions against appellant's attorney individually instead of the appellant, even when repeatedly requested to by the appellant's attorney:

[APPELLANT'S ATTORNEY]: ... What I would like to propose now—the Court suggested when we recessed this afternoon we talk and I won't go into that except that I made proposals. There was no agreement. But there is some new factors in this case that the Court can take into consideration in ruling on this Motion for Reconsideration. You know that the codefendant has settled and paid one hundred and fifty thousand dollars to this Plaintiff. It will be consummated very shortly. Therefore hardship is not present in the Plaintiff if there's any delay in the trial. How is it any sort of injustice if the Court would set aside the defaults judgment against my client? Render any appropriate sanctions against me individually, including

appellant's defense.

attorney's fees or time imprisonment or anything you think that I should—

THE COURT: Don't even suggest that.

[APPELLANT'S ATTORNEY]: Well, I'm very serious about that.

THE COURT: I would not do that, Counsel.

[APPELLANT'S ATTORNEY]: Well, if I could use a simile or a metaphor, it's kind of like my clients have been given the death penalty and I got off free, at least until such time as my client made—in other words, the wrong person is being punished, and so, I'm very sincere now....

Thus, the record reflects that the trial court, which was as unaware of the requirements of *TransAmerican*, 811 S.W.2d 913, or *Braden*, 811 S.W.2d 922, as this court at the time of its ruling, failed to comply with the supreme court's requirements prior to imposing the most severe sanction available. The trial court imposed the most devastating sanction a trial court could assess against a party without assuring that the sanctions were "visited upon the offender", and failed to consider "less stringent sanctions and whether such lesser sanctions would fully promote compliance". *TransAmerican*, 811 S.W.2d at 917. Further, "[i]n the present case, as in *TransAmerican*, it appears lesser sanctions should have been imposed first." *Jaques v. Texas Employers' Ins. Ass'n*, 816 S.W.2d 129, 131 (Tex.App.—Houston [1st Dist.] 1991, no writ).

Having concluded that the trial court imposed the severe sanctions upon appellant without following the requirements of *TransAmerican*, 811 S.W.2d 913, the trial court's order imposing the sanctions is therefore set aside. Since the imposed sanctions affected the entire process, including the trial on the merits, we find no compulsion to address the other points of error.

The judgment is reversed and the cause remanded for a new trial, consistent with this opinion.