Mary Elizabeth CRANE,
et al., Appellants,

v.

TEXAS DEPARTMENT OF
TRANSPORTATION,
Appellee.

No. 12–92–00064–CV.

Court of Appeals of Texas,
Tyler.

March 11, 1994.

Rehearing Denied April 13, 1994.

---

Robert Underwood, Carthage, for appellants.

Cavitt Wendlandt, Asst. Atty. Gen., Austin, for appellee.

Before RAMEY, C.J., and BILL BASS and HOLCOMB, JJ.

RAMEY, Chief Justice.

This is an appeal of the trial court's instructed verdict for the State in an eminent domain proceeding. The landowner, Mary Elizabeth Crane ("Crane"), recovered damages in the amount of the appraisal by the State's valuation expert. Crane's expert witness, Bryan Scott ("Scott"), and her other designated valuation witnesses were not permitted to testify because of Crane's late supplementation of discovery. The primary question in this appeal is whether the trial court erred in proceeding with the trial of this case at a time when the landowner's evidence was required to be excluded. We will reverse the trial court judgment and remand for a new trial.

In the underlying condemnation suit, the sole issue was the market value of Crane's property taken by the State and the damage to the remainder of Crane's land. With no evidence adduced, the trial court granted the State's motion for an instructed verdict for the landowner in the amount of $57,550 as opined by the State's expert. In her Bill of Exception, Crane's expert witness, Scott, testified that the value of the property taken and the damage to the remainder of her property was $214,000.[1] The Special Commissioners had earlier assessed damages to Crane in the amount of $75,000; both sides had filed objections to this award.

The discovery at issue pertained to responses to an instrument designated "Plaintiff's (State's) First Motion to Produce and First Set of Written Interrogatories" mailed to Crane's counsel on January 17, 1991.

---

1. On the Bill of Exception, Crane testified that she also sustained damages from the loss of birds in her aviary business as a result of the taking in the additional amount of $ 235,000.

"Defendant's (Crane's) Answers to Interrogatories and Response to Request for Production" was timely mailed to the State's attorney on February 15, 1991.

The State's interrogatories numbered one and two requested identification information of Crane's expert witnesses as well as those individuals who had knowledge of relevant facts. Crane's response identified Scott and four other experts, including the State's expert witness, Pat Murphy; she listed herself in addition to the experts as having knowledge of relevant facts. In answer to the third interrogatory as to comparable sales, the highest and best use and fair market value of the property, Crane responded, "Will be furnished by written report."

No promised report was provided by June 28, 1991, the date the court on its own motion set the case for trial for the week of July 23, 1991. By agreement the case was passed from that setting. On August 5 the court reset the case for trial for August 22. On that same date, August 5, 1991, Scott's report was received by Crane's counsel; no explanation was offered for Scott's delay of several months in preparing and sending the report to Crane. A copy of that report was mailed to the State on August 8; Crane provided the State with no other written reports.

Other discovery activity by the parties included the taking of Scott's and Crane's oral depositions by agreement on August 15 and 16. On August 22, 1991, the date the case had been set for trial, Crane delivered supplemental answers to certain of the interrogatories in which she increased her claimed damages from $25,000 to $65,000 as a result of the taking which is alleged to have caused a loss of a large number of birds in her aviary operation situated on the property.

A jury was selected on the 22nd and the trial commenced on August 27. On August 26, Crane again supplemented her answers by supplying documentation in support of her claimed damages. After the case was called for trial on August 27, the trial court refused to permit Crane to testify[2] or to present to the jury any other evidence. The State offered no evidence, and the court then granted the instructed verdict in favor of the State.

■ Four of Crane's five points of error relate to the court's refusal to allow her to present valuation evidence by the witnesses Scott, Pat Murphy, Del Moore,[3] or herself. The testimony of these witnesses was excluded because of late supplementation of her answers to interrogatories and the failure to timely provide the promised written reports from the named experts.

Discovery supplementation must be accomplished not less than thirty days prior to the beginning of trial unless there is good cause for later supplementation. Tex.R.Civ.P. 166b(6). A party that fails to timely supplement shall not be entitled to present such evidence unless the court finds good cause to require admission. Tex.R.Civ.P. 215(5).

■ The sanction for failure to supplement discovery is unique. Rule 215(5) prescribes the single mandatory sanction that the untimely supplemented evidence be excluded. We are instructed not to disregard this plain language of Rule 215(5). *Alvarado v. Farah Manufacturing Co., Inc.*, 830 S.W.2d 911, 915 (Tex.1992). There can be no alternative to the imposition of the sanctions of Rule 215(5) absent a strict showing of good cause for the delay in supplementation by the offeror. *Ibid.*

Here, the requirement of supplementation was established by Crane's representation in her interrogatory response that she would furnish written reports. Crane argues that the good cause exception should be used to excuse the failure to comply with discovery "in difficult and impossible circumstances." *Ibid* at 914. Crane offered no explanation for the lateness of the preparation or delivery of the Scott report, the efforts to timely procure it nor an excuse for the other out-of-time supplementation. Crane's counsel blames the State's attorneys for misleading him by agreeing to take the Scott and Crane depositions and not urging a pre-trial motion to compel an earlier production of the Scott

---

2. After testifying to general personal background information.

3. Supervising resident engineer for the Department of Transportation in Panola County.

report, but this conduct occurred within thirty days of trial and could not have been causative of the untimeliness of the supplementation. The trial court did not abuse its discretion in declining to find good cause for late supplementation. Thus, Crane's first, third, fourth and fifth points of error are overruled.

■ Crane's second point of error asserts that the trial court abused its discretion in failing to postpone the trial.[4] This point is not controlled by the mandatory exclusion sanction of Rule 215(5). The general rule is that the trial court's ruling in not granting a postponement will not be disturbed unless the record shows a clear abuse of discretion. *Villegas v. Carter,* 711 S.W.2d 624, 626 (Tex. 1986).

■ Here, the able trial court "reluctantly" excluded all of the landowner's testimony thereby foreclosing the presentation of the merits of her case. The exclusion of a party's essential evidence and granting a directed verdict are severe sanctions to be reserved for a party who has so abused the discovery rules that, despite the imposition of lesser sanctions, its case can be presumed to lack merit. *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913 (Tex.1991); *Braden v. Downey,* 811 S.W.2d 922, 929 (Tex. 1991).[5] These severe sanctions have come to be referred to as the "death penalty" and frowned upon as "trial by sanctions". *TransAmerican,* 811 S.W.2d at 918.

In discovery death penalty cases such as this, the abuse of discretion standard of review is specifically limited by the criteria prescribed in *TransAmerican. Ibid* at 917.[6] These are "constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause." *TransAmerican, Ibid.*

Numerous cases have construed *TransAmerican* in the death penalty context. *TransAmerican* requires that the sanctions be "just". *Ibid.* This justness is measured by two standards which are specific limitations upon the trial court's discretion. *Chrysler Corporation v. Blackmon,* 841 S.W.2d 844, 849 (Tex.1992). The first requires a direct relationship "between the offensive conduct (i.e., the out-of-time discovery supplementation) and the sanction imposed." *TransAmerican,* 811 S.W.2d at 917. The trial court is required to undertake to ascertain if the offending conduct was that of counsel only, the party, or some combination of the two. Here, the court made no such inquiry. From the record, it appears that the party, Crane, did not know about or have any understanding of the delay defect or its consequences in not timely producing discovery. Yet, she only was harmed by the court's sanctions.

Furthermore, "and perhaps most significantly, death penalty sanctions should not be used to deny a trial on the merits unless the court finds that the sanctioned party's conduct 'justifies a presumption that its claims or defenses lack merit' ..." *Chrysler Corporation v. Blackmon,* 841 S.W.2d at 850. Scott's report and Crane's testimony conclusively refute such a presumption. In addition, there is nothing in the record to suggest that Crane or her counsel were guilty of egregious discovery conduct, flagrant bad faith or callous disregard of the responsibilities of discovery. *TransAmerican,* 811 S.W.2d at 918.

---

**4.** ... and in overruling Crane's motion for new trial.

**5.** *TransAmerican* and *Braden* were delivered June 19, 1991, approximately two months before the trial of this suit. Even so, these opinions involve due process concerns and are binding on trial court rulings made even prior to June 19, 1991. *Welex, a Division of Halliburton v. Broom,* 816 S.W.2d 340 (Tex.1991); *Welex, a Division of Halliburton v. Broom,* 823 S.W.2d 704, 710 (Tex. App.—San Antonio 1992, writ denied).

**6.** In fact, the abuse of discretion standard of review is not specifically mentioned in *TransAmerican.* Soules and Wallace, DISCOVERY "DEATH PENALTY" SANCTIONS REVIEWS: NEW "DEVO STANDARD", 55 T.B.J. 135 asserts that the new standard of review of the justness and appropriateness of such sanctions is a de novo review. *See Hanley v. Hanley,* 813 S.W.2d 511 (Tex.App.—Dallas 1991, n.w.h.); *Pelt v. Johnson,* 818 S.W.2d 212, 216 (Tex.App.—Waco 1991, n.w.h.) citing relevant factors to consider as enumerated in *Poulis v. State Farm Fire and Casualty Co.,* 747 F.2d 863, 868–70 (3rd Cir.1984).

In the second test, *TransAmerican* requires that the sanctions not be excessive; they must be appropriate to the misconduct. Specifically, the trial court must consider less stringent sanctions. The record does not show that a lesser sanction was at any time imposed or considered. For instance, a brief delay in commencing the trial coupled with the lesser sanction of a substantial fine or requiring Crane or her counsel to pay the State's expenses of the delay could have been imposed as an initial sanction to determine if it would have successfully promoted full compliance with the discovery rules.

Here, the trial court, at its own instance and without a request by or agreement of counsel, set the case for trial at a time when the trial would commence less than thirty days after the notice of the setting. Thus, if any discovery pertaining to a party's essential evidence required further supplementation on the day that the court set the case, it would be conclusively excluded from the trial as a consequence of the court's setting of the case with a brief lead-time to the trial.[7]

When trial on the merits may be supplanted by "trial by sanctions" for failure to timely supplement discovery, the supreme court has specifically encouraged the postponement of the trial with sanctions to appropriately compensate the non-offending party. *Alvarado v. Farah Mfg. Co., Inc.* 830 S.W.2d 911, 915 (Tex.1992). The only caveat is that the court should not allow the delay to prejudice the non-offender. *Ibid.* The record here does not disclose any possible prejudice to the State from a brief delay, such as irretrievable loss of evidence or the dimming of witnesses' memories. *Hanley v. Hanley,* 813 S.W.2d at 519. The trial court can ordinarily cure any other prejudice by appropriate monetary sanctions upon the party or counsel requesting the postponement. *Alvarado,* 830 S.W.2d at 915–16.[8]

For the reasons stated, we hold that the trial court abused its discretion as limited by *TransAmerican* and its progeny. This case

was adjudicated without regard to the merits of the dispute, but on the parties' conduct of discovery; the court erred in not postponing the trial date in violation of Crane's constitutional due process rights. *TransAmerican,* 811 S.W.2d at 917–18.

Finally, we must determine whether the error in this eminent domain suit constituted reversible error. TEX.R.APP.P. 81(b). Here, the Bill of Exception shows that Crane's intended evidence of damages significantly exceeded that offered by the State; exclusion of this proof was harmful to Crane. The second point of error is sustained.

The judgment of the trial court is **reversed,** and the cause is **remanded for a new trial.**

---

7. Although Rule 166b(6)(b) also requires that the supplementation be provided "as soon as practical", that element of the Rule is not made an issue in this case. *See Mentis v. Barnard,* 870 S.W.2d 14 (Tex.1994).

8. While seeking this postponement, Crane did not file a formal motion for continuance. Although the case had been set for trial twice previously, Crane had never filed for a continuance of the case.