NUMBER 13-09-204-CV

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI - EDINBURG  

                                                                                                                     


 

PETROLEUM SOLUTIONS,
INC,                                                     Appellant,

 

v.

 

BILL HEAD D/B/A BILL
HEAD ENTERPRISES

AND TITEFLEX
CORPORATION,                                               Appellees.

                                                                                                                     
  

 

On appeal from the 398th
District Court 

of Hidalgo County,
Texas.

                                                                                                                     


 

DISSENTING MEMORANDUM
OPINION

 

Before Chief Justice
Valdez and Justices Rodriguez and Vela 

Dissenting Memorandum
Opinion by Justice Vela

 

            I respectfully dissent because I do not
believe the death penalty sanctions issued by the trial court were warranted. 
In Transamerican Natural Gas Corp. v. Powell, 811 S.W.2d 913 (Tex.
1991), the supreme court set forth the standard governing the imposition of
sanctions.  The court indicated that there must be a direct relationship
between the offensive conduct and the sanction imposed, and the sanction
imposed should not be excessive.  Id. at 917.  A sanction must be no
more severe than necessary to satisfy its legitimate purpose and trial courts
must consider the availability of less stringent sanctions and whether such
sanctions would fully promote compliance.  Id.  A sanction order
striking an affirmative defense is tested according to the same standards,
under Transamerican, as the striking of any other pleading.  See
Lanfear v. Blackmon, 827 S.W.2d 87, 91 (Tex. App.–Corpus Christi 1992,
orig. proceeding); see also In re Fina Oil and Chem. Co., No.
13-98-640-CV, 1999 WL 33589153 at * 12 (Tex. App.–Corpus Christi, Mar. 11,
1999, orig. proceeding) (not designated for publication).

            The sanctions meted out in this case included
striking most of PSI’s claims and all of its affirmative defenses.  The
evidence offered at trial was that Barron took the flex connector back to his
office.  In February 2002, Neally, an attorney, came to pick it up.  Barron
testified the last time he saw it was when he loaded it in to Neally’s
vehicle.  Neally engaged the services of David Hendrix, an engineering expert,
to review and inspect the flex connector.  Hendrix admitted receiving a flex
hose connector in early 2002.  He left it with a laboratory to store.  More
than four years later, Head discovered that the underground storage system was
leaking and, more than four years later, sued PSI.  PSI’s attorneys asked for
the return of the flex connector.  Both Hendrix and PSI’s attorneys looked for
the flex connector, but could not find it.  Even Titeflex, the manufacturer of
the underground flex connector, acknowledged in its brief it “has never
contended that misplacement of the flex connector was deliberate or intentional
. . . .” 

            Under Transamerican, PSI’s failure to
locate the flex connector must have some relationship to the trial court’s
action of striking all of PSI’s affirmative defenses.  This Court, in Fina
Oil, opined that that “conduct during discovery has no direct link to the
merits of [defendant’s] affirmative defenses that the relevant limitations period
expired . . . .”  See In re Fina, 1999 WL 33589153 at *13.  Even
though requested to make findings, the trial court did not articulate what
connection there was between the alleged discovery abuse and the striking of
the affirmative defense.  And the majority opinion does not articulate one,
either.

            The majority also disregarded PSI’s argument
that it should not be punished because it was its expert who lost the
connector.  Under the circumstances presented here, there is no evidence that
PSI had anything to do with the failure of the expert to locate the connector
more than four years later.  There is also no support for the proposition that
PSI deliberately misplaced the connector.

            Death penalty sanctions should be only severe
enough to satisfy the legitimate purpose of granting such sanctions.  Courts
are required to consider the availability of less stringent sanctions.  Here,
the majority opinion does not even suggest that lesser sanctions were imposed
first.  The trial court also gave no explanation with respect to the sanctions
it did impose.  The supreme court has indicated that the record should contain
some explanation of the appropriateness of the sanctions imposed.  See Spohn
Hosp. v. Mayer, 104 S.W.3d 878, 883 (Tex. 2003).  Discovery
sanctions that are so severe that they inhibit the presentation of the merits
of the case should be reserved for a party who has callously disregarded the
responsibilities of discovery under the rules.  Id.  Here, PSI was
prohibited from properly raising its affirmative defenses, such as limitations,
which, if proven meritorious, would have prevented Head’s recovery on any
issue.  While PSI’s answer was not struck, PSI was absolutely precluded from
presenting the merits of dispositive defenses. The majority’s conclusion that
the trial court could have granted greater sanctions does not lessen the
reality that PSI went to trial defenseless.  In sum, the evidence outlined in
the majority opinion does not explain conduct that would warrant the imposition
of death penalty sanctions.

            At the very least, this case should be
remanded to the trial court to allow the jury to decide the case based upon PSI’s
defenses, in addition to the claims pleaded by the plaintiff.

 

 

 

                                                                        ROSE
VELA

                                                                                    Justice

 

 

Delivered and filed
the 

29th day of April,
2011.