MONARCH HOMES, INC., Appellant,

v.

CANDLEWOOD JOINT VENTURE, Appellee.

No. 04-90-00427-CV.

Court of Appeals of Texas, San Antonio.

Sept. 30, 1991.

Rehearing Denied Nov. 4, 1991.

Carlos Morris, Paul R. Tinsley and Barry H. Snowden, Morris, Tinsley & Snowden, Houston, Thomas H. Crofts, Jr., Crofts, Callaway & Jefferson, and Cynthia J. Estee, Groce, Locke & Hebdon, San Antonio, for appellant.

Barry Snell, Bayne, Snell & Krause, P.C. and Timothy Patton, Pozza & Patton, San Antonio, for appellee.

Before CHAPA, BIERY and CARR, JJ.

OPINION

CARR, Justice.

The dispositive issue this appeal presents is whether the trial court committed reversible error in sanctioning appellant, Monarch Homes, Inc. (Monarch), by defaulting Monarch on liability for the discovery abuses of Monarch's attorney. In view of the recent Texas Supreme Court case of *Transamerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913 (Tex.1991), we answer in the affirmative.

Appellee, Candlewood Joint Venture (Candlewood), brought this suit as the seller in a real property sales contract, seeking specific performance against Monarch, the buyer. The trial court rendered an interlocutory post-answer default judgment against Monarch. This judgment was based on the failure of Monarch's then attorney to comply with a request for document production and his subsequent violation of the trial court's discovery order concerning the production request. Subsequently, the trial court denied Monarch's motion to vacate the interlocutory post-answer default judgment. In that motion Monarch argued that it did not know of the production request or order because of its attorney's malfeasance.

At the subsequent trial on the issue of damages, the parties stipulated to the amount of the unpaid purchase price ($525,-000) and Candlewood's attorney fees. The trial court rendered a final judgment that

Candlewood recover judgment for the stipulated amounts and a vendor's lien on the subject property. Monarch filed a motion for new trial, which the trial court denied. This appeal followed.

The record reflects that Candlewood and Monarch entered into a contract concerning a 194.5–acre tract of land in Bexar County, Texas, which formed sixty-five lots. The contract obligated Candlewood, the seller, to effect certain improvements, including paved streets with curbs and a public water system. The contract also provided that Monarch was to buy five of the lots within thirty days of the designated completion date and was to purchase the remaining lots in groups of fifteen at ninety-day intervals for a price of $10,500 per lot. Candlewood brought this suit as a result of the undisputed fact that Monarch purchased only fifteen of the sixty-five lots.

Monarch employed the law firm of Morris, Tinsley & Snowden, P.C. (the firm), to defend the suit. The firm assigned the case to Ronald Mitchell, a six-year associate who proceeded to timely file Monarch's answer. It is undisputed that Mitchell failed to respond timely to a set of interrogatories and a request for production, which had been served on him several months after he filed Monarch's original answer. After a hearing on Candlewood's motion for sanctions, the Honorable John Cornyn ordered Monarch to answer the interrogatories and supply the requested documents by a certain date or suffer default judgment. Judge Cornyn also ordered Monarch to pay Candlewood's attorney fees.

On the last day for compliance with Judge Cornyn's order, Mitchell faxed responses to the interrogatories and requests for production to Candlewood's attorney. Mitchell stated that all requested documents in Monarch's custody and control would be produced, but he did not forward the documents themselves. Monarch, however, knew nothing about the production request, the motion for sanctions, or Judge Cornyn's order.

Candlewood consequently filed a motion for entry of default judgment based on Monarch's failure to produce the requested documents. At the hearing Mitchell stated that the documents had been compiled and that there was a misunderstanding about how they were to be made available to Candlewood's attorney. Granting the motion for default "as to liability," the Honorable Raul Rivera decreed that Candlewood recover a specified version of specific performance and ordered an evidentiary hearing to determine what lots had been purchased, the amount of the unpaid purchase price, and Candlewood's attorney fees. Candlewood then filed a motion for summary judgment on those issues.

A week prior to the summary judgment hearing, Mitchell left the firm without informing either the firm or Monarch about anything other than the original trial setting. Upon reviewing Mitchell's files after Mitchell left, the firm discovered Candlewood's motion for summary judgment, which recited the rendition of the default judgment. The firm telephoned Candlewood's attorney, who confirmed the default judgment. The firm also discovered that its case files contained no trace of the discovery/sanction proceedings and learned that Monarch also knew nothing about them. When confronted, Mitchell simply responded: "It's your problem."

Monarch, through the firm and another law firm, Tinsman & Houser, Inc., duly prepared a motion to vacate the interlocutory default judgment, which was presented at the same time as Candlewood's motion for summary judgment. At the hearing on Monarch's motion to vacate the interlocutory default judgment, the parties stipulated to the following testimony:

1. Mitchell was a six-year associate, who had handled major litigation in the past;

2. Mitchell paid the $350.00 sanction order by Judge Cornyn out of his own pocket without informing Monarch or the firm about the order;

3. After Judge Cornyn's sanction order, Mitchell prepared the discovery responses on his home computer and kept his activity on the matter from the firm and Monarch;

4. Mitchell never requested documents from Monarch;

5. Monarch and the firm (apart from Mitchell) had no knowledge of the production request and compliance order until after the interlocutory default judgment had been rendered;

6. Mitchell removed Candlewood's motion for entry of default judgment from the firm's file and paid his own airfare to San Antonio for the hearing;

7. Mitchell never notified Monarch or the firm about the default hearing or the subsequent interlocutory judgment;

8. Mitchell separated his handling of the matter from the firm and concealed his conduct from Monarch and the firm;

9. When the trouble arose, Mitchell ceased to keep firm time records and to comply with the firm's docket control system;

10. After his supervisor discovered other problems, Mitchell left the firm by mutual agreement a week before Candlewood's motion for summary judgment was to be heard, without informing Monarch or the firm of Monarch's situation;

11. Monarch and the firm got the documents to Candlewood within three days after learning of the situation, which was more than three months prior to the original trial setting;

12. Monarch and the firm tendered reimbursement for all attorney fees incurred by Candlewood;

13. Monarch and the firm offered to move the trial setting to an earlier date; and

14. Monarch had a meritorious defense.

The trial court denied both Monarch's motion to vacate the interlocutory default judgment and Candlewood's motion for summary judgment. Thereafter, trial was held on the damage issue only, which resulted in the final judgment from which Monarch now appeals.

■ The discovery sanctions imposed by a trial court are within that court's discretion and will be set aside only if the court clearly abused its discretion. *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex.1986). A trial court may impose sanctions on any party that abuses the discovery process. TEX.R.CIV.P. 215; *Bodnow*, 721 S.W.2d at 840. Sanctions imposed under Rule 215, however, must be "just." *Transamerican Natural Gas*, 811 S.W.2d at 917.

In *Transamerican Natural Gas*, the supreme court adopted two standards to measure whether an imposition of sanctions is just:

First, a direct relationship must exist between the offensive conduct and the sanction imposed. This means that a just sanction must be directed against the abuse and toward remedying the prejudice caused the innocent party. It also means that the sanction should be visited upon the offender. The trial court must at least attempt to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both. This we recognize will not be an easy matter in many instances. On the one hand, a lawyer cannot shield his client from sanctions; a party must bear some responsibility for its counsel's discovery abuses when it is or should be aware of counsel's conduct and the violation of discovery rules. On the other hand, a party should not be punished for counsel's conduct in which it is not implicated apart from having entrusted to counsel its legal representation. The point is, the sanctions the trial court imposes must relate directly to the abuse found.

Second, just sanctions must not be excessive. The punishment should fit the crime. A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes. It follows that courts must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance.

These standards set the bounds of permissible sanctions under Rule 215 within

which the trial court is to exercise sound discretion.

811 S.W.2d at 917 (footnote omitted).

In this case the imposition of the interlocutory default judgment as a discovery sanction was well within the trial court's discretion under the facts then apparent at trial. *See Bodnow*, 721 S.W.2d at 840. The hearing on Monarch's motion to vacate the interlocutory judgment, which produced facts not known or shown at the time of the default judgment hearing, however, invoked an entirely new area of discretion.

In applying the first standard to this case, we find that Monarch did not fail to produce the undisputed documents intentionally or with conscious indifference. The evidence shows that Monarch had no knowledge of the request or compliance order prior to the interlocutory default judgment.

The record reflects that Mitchell surreptitiously did the typing himself, paid the sanction and travel costs out of his own pocket, assiduously divorced himself from the law firm Monarch hired, and told Monarch absolutely nothing about the case. When the firm discovered the problem, Mitchell characterized the matter as the firm's problem—not his. Mitchell independently—not Monarch or the law firm—was the offender for the discovery abuse found. The sanction imposed, however, was upon Monarch.

Regarding the second standard from *Transamerican Natural Gas*, we recognize that a default judgment on liability against a party is a severe sanction. There is nothing in the record to indicate, however, that the trial court considered imposing a lesser sanction or that more lenient sanctions would have been effective.

Understanding that the learned trial judge did not have the benefit of *Transamerican Natural Gas* at the time he refused to vacate the interlocutory default judgment, we grant Monarch's points of error five and six and need not address its remaining points.

We conclude that the trial court erred in refusing to vacate the interlocutory default judgment because the stipulated evidence at the hearing on the motion to vacate shows that neither *Transamerican Natural Gas* standard was met.

Accordingly, we reverse the final judgment, set aside the interlocutory default judgment, and remand this case for further proceedings consistent with this opinion.