**FIRST BANK AND FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for First National Bank of Navasota, Appellants,**

v.

**Paul SHIFLETT, Individually, and as Trustee for Marvin Shiflett, and Marvin Shiflett, Individually, Appellees.**

No. C14-91-00582-CV.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 8, 1992.

Rehearing Denied Nov. 5, 1992.

---

Geoffrey H. Bracken, William B. Allison,
Ward Jacobs, Houston, for appellants.

David L. Monroe, Tom F. Coleman, Jr., Thomas Lee Bartlett, Houston, for appellees.

Before JUNELL, DRAUGHN and ROBERTSON, JJ.

## OPINION

ROBERTSON, Justice.

First Bank and the Federal Deposit Insurance Corporation (FDIC) appeal from the trial court's order striking their pleadings with prejudice and dismissing with prejudice the intervention of the FDIC. Appellants also complain of the evidence supporting the award of damages and the trial court's admission of expert testimony, award of prejudgment interest, and instruction to the jury regarding deemed findings. Appellees bring one cross-point regarding the trial court's decision to grant attorney's fees on an hourly fee basis rather than on a contingency fee basis. We reverse.

In April 1987, First National Bank of Navasota ("FNB") consolidated various outstanding promissory notes of 9–S, Inc. into one promissory note in the principal amount of $663,508.55. Appellee, Paul Shiflett, guaranteed the 9–S note. Appellants contend the note was secured in part by certain Certificates of Deposit ("CDs") in Shiflett's name. In August, 1987, FNB was closed and the FDIC was appointed as receiver. First Bank claims that certain assets of FNB were sold to the FDIC, including the 9–S note, the accompanying guaranty, and the Shiflett note. First Bank further claims it purchased certain assets from the FDIC that had previously belonged to FNB, but that it did not acquire any assets relating to 9–S, Inc. or Shiflett.

In May 1988, Shiflett sued First Bank for conversion of two CDs and for breach of contract. In September 1988, the FDIC, as receiver for FNB, intervened in this suit, seeking payment on the note and claiming it was the owner and holder of the 9–S note, guaranty, and that it had superior rights to appellees' CDs. On January 30, 1990, appellees served appellants with interrogatories. Appellants filed answers to

these interrogatories on March 13, 1990. On March 26, 1990, appellees filed a Motion for Sanctions and to Compel, complaining that appellants' answers to interrogatories were insufficient. Appellants filed supplemental answers on August 17, 1990.

On September 11, 1990, the trial court heard oral argument on appellees' motion for sanctions and to compel. The trial court granted appellees' motion and ordered appellants to answer fully and completely those interrogatories specified in appellees' motion to compel by December 11, 1990 "or [appellants'] pleadings shall be stricken without further notice." On December 11, 1990, appellant First Bank supplemented its answers. Rather than filing supplemental answers, appellant FDIC filed a motion for dismissal on or about December 7, 1990, seeking to voluntarily dismiss, without prejudice, its intervention against Shiflett.

On December 11, 1990, appellees filed a Motion to Effectuate Sanctions Order, claiming that the FDIC failed to comply with the trial court's September 11, 1990 order and attempted to circumvent its discovery obligations by filing a Motion for Dismissal. Appellees also claimed that First Bank failed to answer fully and completely certain specified interrogatories. After hearing oral argument, the trial court granted appellees' motion, struck appellants' pleadings with prejudice, and dismissed the FDIC's intervention with prejudice. Appellants filed a motion for reconsideration of the December 19, 1990 order and the trial court held a hearing on this motion on January 15, 1991. The trial court entered an order on January 18, 1991 denying appellants' motion. After a jury trial on damages, the trial court entered a judgment in favor of appellees, awarding $1,702,692.80 in damages.

In points of error one through six, appellants challenge the trial court's order striking appellants' pleadings with prejudice and dismissing FDIC's intervention with prejudice. Specifically, appellants contend they adequately responded to appellees' interrogatories, the discovery order made the

basis of sanctions was defective, and the sanctions were excessive and unjust.

 Rule 215 authorizes the imposition of sanctions for various discovery abuses. Under paragraphs 2(b)(5) and 3, the rule provides:

If a party or an officer ... of a party fails to comply with proper discovery requests or to obey an order to provide or permit discovery, ... the court in which the action is pending may, after notice and hearing, make such orders in regard to the failure as are just, and among others the following:

. . . .

(5) An order striking out pleadings or parts thereof, or ... dismissing with or without prejudice the action or proceedings or any part thereof, or rendering a judgment by default against the disobedient party;

. . . .

**3. Abuse of Discovery Process in Seeking, Making, or Resisting Discovery.** If the court finds a party is abusing the discovery process in seeking, making or resisting discovery ..., then the court in which the action is pending may, after notice and hearing, impose any appropriate sanction authorized by paragraphs (1), (2), (3), (4), (5), and (8) of paragraph 2b of this rule. Such order of sanction shall be subject to review on appeal from the final judgment.

Tex.R.Civ.P. 215(2)(b)(5), 215(3). Although this rule leaves the choice of sanctions to the sound discretion of the trial court, the sanctions imposed must be "just." *Trans-American Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex.1991). The supreme court has set out two standards for determining whether the imposition of sanctions is just: (1) whether there is a direct relationship between the offensive conduct and the sanction imposed, and (2) whether the sanctions are excessive. *See id.* As to the first standard, the trial court's sanction must be directed against the offender. *See id.* Thus, the trial court must "attempt to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both." *Id.*

As to the second standard, the sanction should be no more severe than necessary and the trial court "must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance." *Id.*

 The sanctions imposed here are the most severe a trial court can assess against a party. "When a trial court strikes a party's pleadings and dismisses its action or renders a default judgment against it for abuse of the discovery process, the court adjudicates the party's claims without regard to their merits but based instead upon the parties' conduct of discovery." *Id.* 811 S.W.2d at 918. Because of constitutional limitations, a trial court's use of discovery sanctions to adjudicate the merits of a party's claims or defenses is proper only if a "party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit." *Id.* Such a presumption is justified where a party refuses to produce material evidence despite a trial court's imposition of lesser sanctions. *Id.* The assessment of the most severe sanction of dismissal or striking a party's pleadings are appropriate only where a party exhibits "flagrant bad faith or [counsel displays] callous disregard for the responsibilities of discovery under the rules." *Id.*

 Under the guidelines of *Trans-American*, we must determine whether the trial court met the two standards for the imposition of just sanctions. Furthermore, we must determine whether appellants' actions constituted flagrant bad faith or a callous disregard for its discovery responsibilities. To make these determinations requires an in-depth review of the facts pertinent to the trial court's order imposing sanctions.

Appellants filed their initial answers to appellees' interrogatories on March 13, 1990. On March 26, 1990, appellees filed their motion for sanctions and to compel. In this motion, appellees complained that First Bank's answers to interrogatories 6, 7, 9, 11, 13, and 20–24 were insufficient. Appellees also complained the FDIC filed

insufficient answers to interrogatories 2–4, 6, 7, 9, 11–14, and 18–24.

Interrogatory 20 asked which entity or entities had actual physical possession of the CDs from August 1987 to date and the dates of any transfers of possession. Appellants originally answered interrogatory 20 in the following manner:

The FDIC has had possession of both certificates of deposit starting from August 12, 1987, either directly by physical custody of the instruments or through custody of the instruments by its bailee, First Bank. The instruments were transferred from time to time in order to renew them or to redeem them. See Exhibit 2 for documentation related to custody.

On August 17, 1990, appellant FDIC filed supplementary responses to interrogatories 2, 6, 7, 9, 11–14, and 19–21. On the same date, appellant First Bank filed supplementary responses to interrogatories 6, 7, 9, 11, 13, and 20–21. Appellants' supplemental response to interrogatory 20 was to provide additional documents.

On September 11, 1990, the trial court held a hearing on appellees' motion to compel. During this hearing, appellees specifically complained about the FDIC's answer to interrogatories 2, 12, and the responses by both appellants to interrogatory 20. During this hearing, appellants' counsel argued that the documents attached were sufficient to show which entity had possession of the CDs from August 1987 to date and that a narrative response to this interrogatory would merely involve transposing information from the documents. The court disagreed and insisted that appellants list the dates the FDIC had possession of the CDs and the dates First Bank had possession. When appellants' counsel continued to argue this point, the trial judge grew irritated as the following excerpt from the hearing demonstrates:

MR. HUNT: I have already given the information, Your Honor.

THE COURT: I mean in the form that I'm referring you to give it?

MR. HUNT: I will just transpose the information from the exhibit.

THE COURT: I don't want you to xerox and tape and cut. I want you to answer the questions by what the truth is.

MR. HUNT: Again, the best I can do is the documentation I have which will say we apparantly [sic] had it—

THE COURT: Are you saying its the best you can do because you don't have the information with which to answer the interrogatory?

MR. HUNT: I'm saying that the information we have is attached as Exhibit 7 and Exhibit 5.

THE COURT: Mr. Hunt, I'm going to warn you, I'm going to strike your pleadings and let [appellees' counsel] draw a judgment as he sees fit in this case if you don't answer these the way I'm asking you or instructing you to.

MR. HUNT: Your Honor, I will try and do exactly what you say.

THE COURT: You don't seem to be. You seem to be arguing with me at each possible opportunity.

At the close of the hearing, appellees' counsel also discussed the responses to interrogatories 22–24 in which appellants had objected that these questions exceeded the thirty question limit. Appellees made an oral motion to the court to allow answers in excess of the thirty for which the rules provide so that appellants would answer interrogatories 22–24. The court granted this motion and entered an order requiring appellants to answer fully and completely those interrogatories specified in appellees' motion to compel by December 11, 1990 or appellants' pleadings would be stricken.

On December 11, 1990, First Bank filed its second supplemental answers to appellees' interrogatories. In response to interrogatory 20 regarding possession of the CDs, First Bank stated:

First Bank and the FDIC have had possession of the original Certificates at various times. From August 12 through November 18, 1987 the FDIC had the original Certificates. The original Certificates were mailed by the FDIC to First Bank on November 18 for renewal as they had matured. First Bank issued renewal Certificates and returned the

original Certificates to the FDIC by mail. On May 31, 1988, the FDIC sent original C.D. No. 315086 in the amount of $100,-000.00 to First Bank and requested it be redeemed and a cashier's check mailed to them. This was done on June 7, 1988. By letter June 2, 1988 the FDIC mailed original C.D. No. 315085 to First Bank for renewal. This was returned to the FDIC by mail. On February 27, 1989, C.D. No. 315366 for $55,000.00 matured and is still apparently held by the FDIC. First Bank has continued to pay interest on the unrenewed Certificate without authority.

Several days before First Bank filed these answers, the FDIC had filed a motion to dismiss its intervention without prejudice. The FDIC did not file second supplemental responses to appellees' interrogatories.

On the same date that First Bank filed its second supplemental answers, appellees filed their Motion to Effectuate Sanctions Order, in which appellees claimed the FDIC's motion for dismissal was an attempt to circumvent its discovery obligations. Appellees also complained that First Bank's second supplemental answers were defective in that they failed to identify the following:

1. The person(s) who had actual physical possession of the Certificates of Deposit made the basis of the lawsuit during the pertinent period of time.

2. The actual location where such person had actual possession of the Certificates of Deposit made the basis of this lawsuit during the pertinent period of time.

3. What specific assets were identified as being included in the Assignment to First Bank, including but not limited to the Certificates of Deposit made the basis of this lawsuit.

The first complaint quoted above was not a question in appellees' interrogatories. Rather, interrogatory 20 asked what entity or entities had actual physical possession of the CDs. Appellants answered this question. Appellees' second complaint quoted above is similar to interrogatory 22 in that

interrogatory 22 asked for the exact physical location of the CDs during the pertinent time period and any documents reflecting this location. Interrogatory 22 did not mention a "person" having actual possession. In their second supplemental answer to this question, appellants referred appellees to the responses to interrogatories 20, 21, and 24 and documents attached as Exhibit 3. The answers to these three interrogatories stated which entity, First Bank or the FDIC, had actual possession of the CDs at the pertinent time periods. Appellees' third complaint quoted above mentions appellants' failure to identify specific assets in the Assignment to First Bank including but not limited to the CDs. None of appellees' interrogatories asked for this information. Certainly, there is no basis for the imposition of sanctions where a party has failed to answer questions that were not asked.

Following these three specific complaints, appellees added that First Bank had wholly failed to answer interrogatories 2–5, 12, 14, and 17–18. Appellees had not complained about First Bank's answers to these interrogatories in their original motion for sanctions and to compel, upon which the trial court's September 11, 1990 order was based. Because the responses to these interrogatories were not part of appellees' original motion to compel and for sanctions, upon which the September 11, 1990 order was based, appellants' failure to supplement these responses could not be a violation of the trial court's order and thus, could not serve as the basis for imposition of the sanctions. Appellees conceded as much and abandoned its complaints about these interrogatories during the December 19, 1990 hearing. Thus, of all the complaints by appellees in their motion to effectuate sanctions order, the only ones that related to the court's September discovery order and to appellees' motion to compel and for sanctions were those complaints about responses to interrogatories 20 and 22.

Discussions at the December 19, 1990 hearing on appellees' motion to effectuate sanctions order, however, did not focus on

complaints about the responses to interrogatories 20 and 22. Instead, most of the discussion concerned the FDIC's motion for dismissal and the possible impact of its dismissal. Appellees made a general argument about the defective responses and cited *Tri–M Erectors, Inc. v. Clearwater Constructors, Inc.*, 788 S.W.2d 906 (Tex. App.—Austin 1990, writ denied) as support for striking appellants' pleadings with prejudice.

Although appellants indicated their willingness to discuss their second supplemental answers, the trial court did not review or discuss these answers on the record. After more discussion about the effect of FDIC's dismissal, the trial judge stated that he thought appellees had a good argument on the sanctions issue and told appellants that he would be signing an order striking their pleadings with prejudice and dismissing the FDIC's intervention with prejudice.

Appellants contend the sanctions were unjustified because the second supplemental answers adequately responded to interrogatories 20 and 22, no inadequacies were identified during the December 19, 1990 hearing, First Bank should not be sanctioned for conduct of the FDIC, the sanctions imposed were excessive, and the September 11, 1990 order was defective. After reviewing the record, we agree with appellants that First Bank's second supplemental responses to interrogatories appear to adequately describe the actual location of the CDs and the entity or entities in possession of the CDs during the material time periods. The trial court did not review these responses or identify any inadequacies in these responses during the December 19, 1990 hearing. Even if these answers were in some way inadequate, we would still find error in the imposition of this sanction against First Bank because it is excessive.

Appellees contend the striking of appellants' pleadings is justified by appellants willful conduct and bad faith in failing to respond adequately to a number of interrogatories, including and additional to interrogatories 20 and 22, and by engaging in a pattern of discovery abuse. The basis for the sanctions, however, was the trial court's determination that appellants violated the September 11, 1990 order which required additional responses to the interrogatories referenced in appellees' motion for sanctions and to compel. We find no evidence in the record showing a pattern of discovery abuse. With respect to answering the interrogatories specified in appellees' original motion for sanctions and to compel, we find no evidence in the record that First Bank acted with flagrant bad faith or callous disregard for discovery obligations. Furthermore, we find no evidence in the record that the trial court attempted to determine whether the alleged misconduct was that of the party or its counsel. Thus, we hold the trial court abused its discretion in striking First Bank's pleadings with prejudice.

■ We turn next to whether the trial court erred in striking with prejudice the pleadings of the FDIC and dismissing its intervention with prejudice. Discussion during the December 19, 1990 hearing focused primarily on the FDIC's motion for dismissal, its impact on the case, and whether this motion was a scheme to evade discovery obligations. The FDIC's counsel argued that granting the FDIC's motion for dismissal would not affect appellees' claims against First Bank and that Rule 162 allowed the FDIC to move to dismiss its intervention voluntarily. During the January 15, 1991 hearing on appellants' motion for reconsideration, the FDIC's counsel raised an additional argument supporting its motion for dismissal. This argument was that the FDIC–Receiver was the wrong party to bring the intervention and that the proper party should have been FDIC Corporate, the entity that owned the assets previously held by FNB.

Rule 162 provides that a plaintiff may dismiss its case or take a non-suit at any time before it has introduced all of its evidence. TEX.R.CIV.P. 162. The rule further provides:

> Any dismissal pursuant to this rule shall not prejudice the right of an adverse party to be heard on a pending

claim for affirmative relief or excuse the payment of all costs taxed by the clerk. A dismissal under this rule shall have no effect on any motion for sanctions, attorney's fees or other costs, pending at the time of dismissal, as determined by the court.

TEX.R.CIV.P. 162.

Appellees never sued the FDIC as a defendant and sought no affirmative relief from the FDIC. Thus, dismissal of the FDIC's intervention could not have prejudiced any right of appellees to be heard on a pending claim against the FDIC. There was, however, a motion for sanctions pending. The FDIC's motion for dismissal did not affect the trial court's authority to impose sanctions against the FDIC for violating the September discovery order. *See* TEX.R.CIV.P. 162; *Tri–M*, 788 S.W.2d at 908. Because the FDIC did not supplement its answers to appellees' interrogatories, the FDIC was in violation of the trial court's September order and the trial court had the authority under Rule 215 to impose appropriate sanctions.

■ In determining the appropriate sanctions, however, the trial court had to consider the effect of the FDIC's decision to take a non-suit on its claim against appellees. Because appellees had never brought any claims against the FDIC, we fail to understand how their dismissal would affect appellees' claims against First Bank. Appellees argue that the FDIC's failure to supplement its answers coupled with First Bank's addition of the names of several FDIC employees as experts expected to testify at trial indicated that appellants were deliberately refusing to make information available to appellees that would be used to defeat appellees at trial. We disagree. Even if the FDIC took a non-suit on its claim against appellees and failed to supplement its answers to certain interrogatories, appellees were not precluded from discovering the subject matter of the anticipated testimony of the newly designated experts. Appellees could have moved for a continuance and taken depositions of these experts.

Furthermore, we find nothing prejudicial about the FDIC's decision to take a non-suit despite the possibility that FDIC Corporate might subsequently bring suit against appellees for nonpayment of the note. The FDIC was not required to assert its claim on the note by intervening in the instant lawsuit. As the following excerpt from the hearing on the motion for reconsideration reveals, the trial court viewed the FDIC's motion for dismissal as a subterfuge to avoid its discovery obligation and as harmful to appellees:

THE COURT: You see how the appearance could be interpreted that FDIC Receiver stays in as long as it is going pretty good and as long as they can if they intended on evading the discovery process, and then once it gets to the point where they don't like it anymore they say I'm sorry, we shouldn't have been in here anyway. And the FDIC Corporate files it in Federal Court and Plaintiff Shiflett has been trying to seek relief for how many months or years it has been only to find themselves starting over in Federal Court. That is the way it could be perceived.

We disagree with the trial court's perception of the motion for dismissal. If appellees had brought any claims against the FDIC, we would agree with the trial court that the dismissal would harm appellees. Furthermore, Rule 162 prohibits a party from taking a non-suit if it would prejudice the other party's claims for affirmative relief. TEX.R.CIV.P. 162. There is no evidence in the record that the FDIC's absence from the case would have left appellees without the ability to obtain pertinent discovery regarding the FDIC's alleged security interest in the CDs from First Bank. Because we find no evidence of bad faith on the part of the FDIC, we find the sanctions imposed do not meet the standard asserted in *TransAmerican* for the imposition of the sanction of striking a party's pleadings with prejudice. *See TransAmerican*, 811 S.W.2d at 918. The record reveals no consideration by the trial court whether any misconduct by failing to supplement its answers to interrogatories was the fault of the FDIC or its counsel. We

further find that the sanctions of striking the FDIC's pleadings with prejudice and dismissing its intervention with prejudice was excessive.

In conclusion, we find the trial court abused its discretion in entering the December 19, 1990 order striking appellants' pleadings with prejudice and dismissing the FDIC's intervention with prejudice. We sustain points of error one, three, four, and six. Given our disposition on these points, we need not consider appellants' other points of error or appellees' cross-point.

█ We reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.[1]

---

1. During oral argument, appellants' counsel stated that we could either reverse the trial court's judgment or, under the authority of *Fletcher v. Blair*, 843 S.W.2d 601 (Tex.App.—Austin, 1992, n.w.h.), merely vacate the order of December 19, 1990 and remand the case to the trial court. In *Fletcher*, the court of appeals noted that the trial court entered its sanctions order without the benefit of the supreme court's subsequent opinion in *TransAmerican*. Therefore, the court of appeals reasoned that it should vacate the trial court's order and remand the cause to the trial court for further proceedings in light of *TransAmerican*. We disagree with this disposition. Although the trial court in this case did not have the benefit of *TransAmerican* when it entered its December 19, 1990 order, a panel of this court and other courts of appeals have reversed and remanded under such circumstances. *See Pedraza v. Peters*, 826 S.W.2d 741 (Tex.App.—Houston [14th Dist.] 1992, no writ); *Lassiter v. Shavor*, 824 S.W.2d 667 (Tex.App.—Dallas 1992, no writ); *Welex v. Broom*, 823 S.W.2d 704 (Tex.App.—San Antonio 1991, writ denied); *McCoy v. Knowles*, 821 S.W.2d 282 (Tex.App.—Fort Worth 1991, no writ); *Monarch Homes, Inc. v. Candlewood Joint Venture*, 817 S.W.2d 768 (Tex.App.—San Antonio 1991, no writ); *Jaques v. Texas Employers' Ins. Ass'n*, 816 S.W.2d 129 (Tex.App.—Houston [1st Dist.] 1991, no writ). Furthermore, the rules of appellate procedure do not provide for a judgment vacating a lower court's order and remanding the case for further proceedings. *See* Tex.R.App.P. 80. Rule 80 authorizes a court of appeals to render only the following types of judgments: (1) affirm the trial court's judgment; (2) reverse the judgment and dismiss the case or render the judgment the trial court should have rendered; or (3) reverse the judgment and remand the case for further proceedings. Tex.R.App.P. 80. Therefore, we reverse the trial court's judgment and remand the case to the trial court.