# Supreme Court of the Navajo Nation

**Tohatchi Special Education and Training Center, Inc.,**
**and**
**Gordon Nez, Defendants-Appellants,**
**v.**
**MacArthur Halona, Plaintiff-Appellee.**
**Decided July 8, 1996**

## OPINION

Before YAZZIE, Chief Justice, AUSTIN and CADMAN, Associate Justices.

Donna M. Christensen, Esq., Albuquerque, New Mexico, for the Defendants-Appellants; and Morgan L. Queal, Esq., Saquache, Colorado, for the Plaintiff-Appellee.

Opinion delivered by AUSTIN, Associate Justice.

Tohatchi Special Education and Training Center, Inc. and Gordon Nez ("Appellants") appeal a default judgment entered against them for abuse of the discovery process and failure to pursue their claims. The issue is whether the district court abused its discretion by entering default judgment against the Appellants.

## I

On November 22, 1993, MacArthur Halona ("Halona") sued the Appellants alleging various counts related to breach of an employment contract. The Appellants answered on February 2, 1994, alleging a counterclaim of defamation. They retained Albert Hale ("Hale") as legal counsel.

At a pretrial conference on May 2, 1994, where all the parties appeared, the district court ordered that discovery would terminate on August 31, 1994. Shortly thereafter Hale began campaigning for the office of Navajo Nation president.

Between June 6, 1994 and August 8, 1994, Halona sent the Appellants interrogatories, which they did not answer, nor did they request additional time to answer. On August 8, 1994, Halona filed a Motion to Compel Discovery and a Motion for Extension of Time to Complete Discovery.

On August 26, 1994, the district court granted Halona's motion, ordering the Appellants to comply fully with discovery by September 7, 1994. However, the Appellants still did not answer the interrogatories. Halona then drafted a Notice

of Withdrawal of the Motion to Extend Discovery and a Motion for Judgment in his favor. He mailed copies of the drafts to Hale.

At a pretrial conference on September 12, 1994, Hale stated that he had voluminous discovery documents. At the same pretrial conference, Halona filed the Notice of Withdrawal of Motion to Extend Discovery and the Motion for Judgment. The Motion for Judgment cited the Appellants' flagrant and willful disobedience of the discovery orders. The court orally denied Halona's Motion for Judgment despite the Appellants' non-compliance and failure to pursue discovery in support of their counterclaim. The court also orally directed Hale to produce answers and documents by the end of the day.

On September 30, 1994, the district court filed its order on the September 12, 1994 pretrial conference. The court denied judgment for Halona, but ordered the Appellants to deliver complete responses to requests for production and answers to interrogatories by September [sic] 12, 1994.[1] The court awarded Halona costs, which were to be paid by October 19, 1994, as a sanction for the Appellants' failure to disclose on time. The court also conditioned the Appellants' ability to maintain their counterclaim on their compliance with discovery orders. Lastly, the court extended discovery sixty more days, until November 30, 1994.

On October 13, 1994, the Appellants partially answered the interrogatories and partially delivered requests for production. They also filed an Amended Complaint and Counterclaim.

On October 27, 1994, Halona filed a Second Motion for Judgment on the grounds that the Appellants had only partially complied as ordered. On November 21, 1994, Halona filed a pretrial statement. The Appellants did not.

The Appellants did not appear at a pretrial conference on November 28, 1994. Furthermore, they had not paid the sanctions as ordered on September 30, 1994. At the conference, the court granted Halona's Second Motion for Judgment on breach of contract finding that the Appellants' "repeated failures ... to provide discovery and to diligently pursue their claims, in view of the Court's Orders to produce discovery, amounts to willful and flagrant abuse of the [discovery] process...."

A trial on damages was held and the court filed its final judgment on December 30, 1994. The Appellants appeal the default judgment.

## II

A trial court has discretion to impose sanctions, including entry of judgment or dismissal of complaint, for a party's failure to obey discovery orders. Nav. R. Civ. P. 37(b) (2) (C). This Court will not overturn a trial court's default judgment unless it is clear that the district court abused its discretion in sanctioning parties for their non-compliance with discovery orders. *Jones v. Teller*, 7 Nav. R. 53, 55 (1993); *Billie v. Abbott*, 6 Nav. R. 66, 76 (1988); *In re Summary Contempt of: Tuchawena*, 2 Nav. R. 85, 89 (1979).

---

1. The court likely intended October, and not September.

A district court may enter judgment after finding flagrant disregard of its order compelling discovery, flagrant abuse of the discovery process, or willful and bad faith failure to comply with its discovery orders. *Chavez v. Tome*, 5 Nav. R. 183, 186 (1987); *Four Corners Auto Sales, Inc. et al. v. Begay*, 4 Nav. R. 100, 103 (1983). In *Billie*, 6 Nav. R. at 76, we also required a finding that failure to comply with the court's order was willful and the circumstances were so aggravated as to justify a default.

Synonymous terms mentioned above can be applied as a whole, each phrase enlightening the extremity of discovery abuse that must occur before a court has discretion to enter a default judgment. These terms attempt to balance conflicting interests: courts must prevent parties from delaying other parties during their trial preparation, while simultaneously facilitating the adjudication of cases on the merits. *Billie*, 6 Nav. R. at 76.

A default judgment will be reviewed scrupulously, lest trial courts employ them to sanction actions that are not extreme abuses of the discovery process. *Id.* Trial on the merits is strongly favored over default. *Id.* We will overturn a default judgment only when a trial court has abused its discretion, not when this Court would have chosen a less severe sanction than the default judgment. *Id.* The district courts can help ensure their free exercise of discretion by considering lesser sanctions before entering a default judgment for discovery abuse. *See Four Corners*, 4 Nav. R. at 103.

The Appellants' principal argument in this case is that they did not receive notices of motions, orders, and hearings; thus, they were not at fault for failure to respond to discovery requests. The Appellants do not claim that their counsel, Hale, did not receive the orders or pleadings. Rather, they claim that Hale did not inform them about these matters. They claim they are not at fault individually, for the conduct that resulted in the default judgment against them.

In *Chavez v. Tome*, we ruled that a client against whom a district court had entered a default judgment could not cast the blame on his counsel. 5 Nav. R. at 188-89. There, the court entered a default judgment on liability against Tome, as a sanction for his consistent failure to comply with discovery rules and the court's order compelling discovery. On appeal Tome argued that it was unfair to punish him "... for the failings of his counsel." *Id.* at 186. Our holding on that point applies here:

> The incapacity of counsel will not allow a party to escape the consequences of having freely selected that particular counsel. A party to a suit has a responsibility to maintain contact with his counsel and assure that his case is being handled properly. The court cannot be made the watchdog of the attorney-client relationship to assure that the client has made a good choice as to his attorney. This would be inconsistent with our system of representative litigation. Further, it would be unfair to penalize the opposing party and make them relitigate all the issues, when there is an action for malpractice available to any party who feels that their counsel's conduct has fallen below what

> would be reasonable under the circumstances.... When Tome became aware of [his counsel's] intention to withdraw he should have immediately obtained other counsel. The record shows that Tome knew, at least at the time of deposition, of [his counsel's] intent to withdraw, yet he took no steps to protect his own interest.

*Id.* at 188-89.

In *Jones v. Teller*, 7 Nav. R. at 56, we said that counsel could not use his inability to contact clients by telephone as excusable behavior that would bar an order for default judgment. When the clients arrived at his office unannounced, the attorney was not there nor had he prepared his staff to handle discovery preparations in his absence. Consequently, the district court dismissed the claim for failure to prosecute. We found that "[t]he counsel's alleged inability to communicate with his clients was not created by the court; thus, it cannot support reversal of the court's order." *Id.*

The Appellants attempt to distinguish their situation from that in *Jones*. They argue that whereas in *Jones* the defaulted plaintiff never attempted to comply with court orders himself and never attempted to contact counsel, here the Appellants made a serious effort to comply and reasonably relied on their attorney. They gave their attorney all documents they thought would satisfy Halona's interrogatories. They did not appear at pretrial conferences because they themselves never received notice. The Appellants claim that their attorney did not inform them of the district court's scheduling of their case. They claim they should not be punished for their attorney's lack of diligence.

We are not persuaded by the Appellants' argument. The Appellants retained counsel who acted as their agent and representative. When a court communicates with counsel, it has communicated with that counsel's client. *Tome*, 5 Nav. R. at 189. The civil procedure rules support the position that when counsel is served, a client is served: "If a party is represented by counsel, the service shall be made upon counsel unless the court orders otherwise." Nav. R. Civ. P. 5(b).

Despite established Navajo law, the Appellants urge this Court to adopt a new standard of discretion. They point to an evolving body of law which requires a trial court to determine who acted with contempt (client, counsel or both), then sanction accordingly. The Appellants state that this rule evolved in the Texas courts through interpretation of Texas Rule of Civil Procedure 215, a rule similar to Nav. R. Civ. P. 37.

The Appellants analogize their case to *Monarch Homes, Inc. v. Candlewood Joint Venture*, 817 S.W.2d 768 (Tex. App. 1991), which interprets the Texas rule. There the trial court awarded a default judgment which the appellate court reversed because "[f]irst ... a party should not be punished for counsel's conduct in which it is not implicated apart from having entrusted to counsel its legal representation ... [and s]econd just sanctions must not be excessive." *Id.* at 770. Applying the two-part, *Monarch* standard, Appellants argue that, first, their attorney's conduct is contemptible and their own conduct is not and, second, sanc-

tioning them with a default judgment is excessive.

We will not adopt the *Monarch* standard for two reasons. First, the Texas Supreme Court said it was difficult to apply: "The trial court must at least attempt to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both. This we recognize will not be an easy matter in many instances." *Transamerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). Second, the *Tome* decision articulates policy reasons which reject the standard. Parties cannot escape the consequences of incapable counsel after freely selecting that particular counsel. This policy is underscored when, as the Appellants' case demonstrates, clients are sophisticated business entities or executives who have the ability to monitor their attorney's behavior.

Clients bear responsibility to maintain contact with their attorneys and assure that their cases move forward. Although they may not have the technical expertise to determine which tactical maneuver would serve their best interests at each turn in the adversary process, clients can and should demand explanation and performance from their attorneys throughout their service. If attorneys fail to maintain a productive relationship and protect their clients' interests, clients must initiate a change and take their business elsewhere. As stated in *Tome*, courts cannot act as watchdogs of the attorney-client relationship because such oversight would be inconsistent with the Navajo system of representative litigation. Here, the Appellants are sophisticated clients who knew of imposing deadlines of discovery, who knew of the consequences of failing to produce discovery materials, who knew that their attorney had chosen to pursue an elected office and was devoting limited time to their case, and yet they failed to discharge him when poor communication became evident.

In an appropriate case a district court may distinguish between the conduct of client and counsel if the facts and circumstances justify such an inquiry. However, where clients are corporate organizations or where they can make sophisticated and capable decisions, our courts need rarely, if ever, distinguish between client and counsel conduct.

As an alternative to adopting the Texas standard, the Appellants argue that *Tome* need not be overturned to reverse the district court's order of default judgment against them. They argue that the ruling in *Tome* applied to the specifics of that case, where Tome's own conduct justified default judgment. The Appellants urge that this Court can both remain within *Tome's* standard and overturn the default judgment as it did in *Billie*.

Yet, the facts of this case resemble *Tome* more than they do *Billie*. Like *Tome*, the clients themselves failed to produce discovery when they knew they bore responsibility to do so. On May 2, 1994, the Appellants appeared at the pretrial conference where trial dates and discovery deadlines were negotiated. However, after they were served interrogatories and requests to produce, which were due by July 11, 1994, they still had not provided answers by August 8, 1994.

On August 26, 1994, the district court ordered the above-mentioned discovery to be completed by September 7, 1994. The Appellants knew of impending sanctions, yet made minimal effort to forward discoverable material to Hale. The district court imposed sanctions and even warned them about dismissing their counterclaim and entering default judgment against them if they continued to ignore discovery orders.

Although the Appellants produced documents and answers to the interrogatories on October 13, 1994, they were incomplete. Also, the Appellants made no discovery related to their own defense or counterclaim. They further admit to the following: failure to pay court-ordered sanctions on time; failure to file a pretrial statement; failure to appear at a pretrial conference on November 28, 1994; and failure to appear at the trial on damages. Their only explanation for their failures is that their counsel failed to communicate with them.

The Appellants state that the last telephone contact they had with their counsel occurred sometime between August 15 and August 31, 1994, and the last contact by mail occurred before September 22, 1994. They admit to not knowing about the changes in trial schedule due to lack of communication with their counsel. They argue that they would have complied with any order and discovery had they known of the deadlines and orders.

Ignorance is no excuse for lack of diligence. Unfortunately, the Appellants did not diligently maintain communication with their counsel and this left them ignorant. They even admit that their general counsel merely trusted Hale as an attorney, because Hale had over seventeen years of legal experience. The district court concluded that this inattention was the result of willful and flagrant abuse of the discovery process and we agree.

The district court was mindful of the parameters of its discretion in awarding default judgment. The court initially decided not to award a default judgment, preferring to admonish the Appellants and impose lesser sanctions. In fact, the Appellants failed to pay the sanctions (costs) until after the default judgment was entered against them.

The Appellants argue that the district court should have ordered a hearing to show cause. The facts and circumstances of this case show that would have been a futile gesture. We believe the district court was correct in choosing other procedures to deal with the Appellants' repeated discovery abuses.

Finally, the Appellants argue that their due process rights were violated, because default judgment was awarded without their presence and notice to them. The Appellants had prior notice of what they were to do and the consequences for failure to do it. No additional notice is required for entry of default under our rules. Under the Navajo Nation Bill of Rights, 1 N.T.C. § 3, and Navajo common law, due process requires notice and an opportunity for all parties to speak. When a party freely chooses counsel, that party chooses to receive notification by and through that counsel. Clients have the responsibility to require their counsel to continue communication with them. Neither the courts

nor opposing parties bear this responsibility. The Appellants' due process argument is without merit.

In summary, the Appellants cannot blame the district court or the opposing party for their inability to communicate with their attorney. Hale was notified of all court proceedings and he had an opportunity to appear at those proceedings. Consequently, the Appellants also had an opportunity to speak there. We hold that the district court did not abuse its discretion in awarding judgment on liability and damages to Halona.

The Window Rock District Court's December 30, 1994 decision is AFFIRMED.