NO. 12-01-00232-CV



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT


 

TYLER, TEXAS




§
 



IN RE: LINDA JACKSON,
§
 ORIGINAL PROCEEDING

RELATOR


§
 







PER CURIAM
 

 In this original mandamus proceeding, Relator, Linda Jackson ("Jackson"), complains of the
trial court's denial of her Motion to Withdraw and Substitute Deemed Admissions. For the reasons
stated below, we conditionally grant the writ of mandamus.


Background 


 The lawsuit underlying this original proceeding concerns the death of Lucille Parrish
("Parrish"). According to Plaintiffs' (1) Third Amended Original Petition, (2) Parrish was a resident of
Westward Trails Manor ("Westward Trails") nursing home in May, 2000. Jackson was the
administrator of Westward Trails at this time. Plaintiffs allege that on May 2, 2000, Parrish was
attacked and pulled out of her bed by a fellow resident of Westward Trails, Claude Linthicum. As
a result of this incident, Parrish suffered multiple injuries which eventually resulted in her death. 

 Plaintiffs brought a wrongful death and survival action against multiple defendants, (3)
including Westward Trails and Jackson, contending that Parrish's death was proximately caused by
the defendants' acts or omissions. Plaintiffs assert that the defendants had knowledge of Linthicum's
wandering, agitation, confusion, and episodes of psychotic behavior and that defendants should have
known that Linthicum could commit an assault, such as the one on Parrish. With regard to Jackson,
Plaintiffs allege, among other things, that Jackson failed to (1) adhere to the standards of care
required of a nursing home administrator, and (2) require and have sufficient staff to provide safety
and protection to Parrish. Jackson has filed an answer containing a general denial. 

 On May 11, 2001, the attorney representing Jackson, Michael G. Dunahoo ("Dunahoo"),
received a transmittal letter from Plaintiffs reflecting the enclosure of "Plaintiffs' First Set of
Discovery, to Linda Jackson, Nacogdoches Nursing Center, and Nacogdoches Healthcare Partners,
L.P." (4) Dunahoo's secretary calendared the due date for responses and objections to these discovery
requests for June 11, 2001. According to Dunahoo's affidavit, (5) encompassed within these discovery
requests were interrogatories, requests for production and requests for admission directed to
Nacogdoches Nursing Center and Nacogdoches Healthcare Partners, L.P. However, he does not
recall seeing interrogatories, requests for production or requests for admission directed to Jackson
in this first set of discovery. At this point, according to Dunahoo, the only discovery directed to
Jackson were requests for disclosure. (6) On May 28, 2001, Dunahoo instructed his secretary to prepare
a Rule 11 agreement extending the deadline to respond to "Plaintiffs' First Discovery Sets to
Defendants Linda Jackson, Westward Healthcare Partners, L.P., and Nacogdoches Nursing Center"
to June 25, 2001. This Rule 11 agreement also extended the deadline for "Defendants Responses
to Plaintiffs' Requests for Disclosure" to June 24, 2001. 

 Because Dunahoo had left on vacation, another attorney in his firm signed the Rule 11
agreement on his behalf and the agreement was faxed to Plaintiffs' attorney on May 29, 2001. 
Plaintiffs' attorney signed the agreement. On June 25, 2001, Dunahoo filed answers and objections
to the discovery directed to Nacogdoches Nursing Center and Nacogdoches Healthcare Partners, L.P.
and responded to the requests for disclosure to directed to Jackson as well. Because Dunahoo failed
to file responses to the requests for admission directed to Jackson on June 25, 2001, these requests
were deemed admitted. (7) Tex. R. Civ. P. 198(2). When Dunahoo went to clear the diary entry off
his calendar, he noticed that the diary entry included a first set of discovery to Jackson. Unable to
locate any such discovery in the file, Dunahoo called Plaintiffs' attorney on June 25 and asked if he
had, in fact, sent interrogatories, requests for production and requests for admission to Jackson. 
Dunahoo told Plaintiffs' attorney that he could not find this discovery in the file. Plaintiffs' attorney
responded that he believed these documents had been sent.

 On June 27, 2001, Dunahoo received a letter from a legal assistant with Plaintiffs' attorney's
firm enclosing a copy of interrogatories, requests for production and requests for admission directed
to Jackson. Dunahoo again searched the file, and still could not find these documents. He testified
that at this time, he believed he had thirty days to respond to this discovery. On July 19, 2001,
Plaintiffs' attorney sent the following letter to Dunahoo:


 Dear Mr. Dunahoo:


 Where are Linda Jackson's discovery responses? You had them on May 29th when you
asked for a Rule 11 extending your client's time to respond to June 25th. (A copy of your May 29,
2001 letter is attached for your convenient reference). On June 25th you said you couldn't find them
and I sent you another copy. No additional Rule 11 agreements have been discussed. Where are her
answers and responses?


On July 20, 2001, Dunahoo filed Jackson's answers, objections and responses to Plaintiffs'
interrogatories, requests for production and requests for admission. 

 In his affidavit, Dunahoo stated that if he received interrogatories, requests for production
and requests for admission on May 11, 2001, he has no idea what happened to them. He testified
that billing records do not indicate that he billed for reviewing this discovery until he received the
set that arrived at his office on June 27, 2001. Further, he stated that if he did receive the discovery
on May 11, 2001, this set was inadvertently misplaced and the failure to timely respond was not
intentional or the result of conscious indifference. In addition, he asserted that when he received the
discovery requests on June 27, 2001, he believed he had thirty days to respond, since he believed he
had not received this discovery previously. 

 On August 6, 2001, Plaintiffs filed a "Motion for Order Finding Admissions Deemed
Admitted." Jackson filed a "Response to Plaintiffs' Motion to Deem Admissions and, Alternatively,
Motion to Withdraw and Substitute Deemed Admissions." After a hearing on August 14, 2001 and
after taking the matter under advisement, the trial court signed an order on August 16, 2001 finding
that Jackson had failed to show good cause for the withdrawal of the deemed admissions. Therefore,
the trial court denied Jackson's motion. Jury selection in this case is set to begin on October 29,
2001, with trial beginning on November 5. In her petition for writ of mandamus, Jackson asks this
Court to issue a writ of mandamus directing the trial court to (1) vacate its August 16, 2001, order
denying Jackson's Motion to Withdraw and Substitute Deemed Admissions, and (2) enter an order
allowing Jackson to withdraw and amend her deemed admissions.


Standard of Review


Clear Abuse of Discretion

 A writ of mandamus will issue "only to correct a clear abuse of discretion or the violation
of a duty imposed by law when there is no other adequate remedy by law." Walker v. Packer, 827
S.W.2d 833, 839 (Tex. 1992). "A trial court clearly abuses its discretion if 'it reaches a decision so
arbitrary and unreasonable as to amount to a clear and prejudicial error of law.'" Id. (quoting
Johnson v. Fourth Court of Appeals, 700 S.W.2d 916, 917 (Tex. 1985)). Further, "[a] trial court
has no 'discretion' in determining what the law is or applying the law to the facts. Thus, a clear
failure to analyze or apply the law correctly will constitute an abuse of discretion, and may result in
appellate reversal by extraordinary writ." Id. at 840. 

Adequate Remedy by Appeal

 Assuming the relator can establish that the trial court abused its discretion, the relator must
also show that he has no other adequate remedy at law, such as an appeal. Id. In Walker, the Texas
Supreme Court held that an appeal will be inadequate where the relator's


 [A]bility to present a viable claim or defense at trial is vitiated or severely compromised by the trial
court's discovery error... [T]he relator must establish the effective denial of a reasonable opportunity
to develop the merits of his or her case, so that the trial would be a waste of judicial resources. We
recently held that when a trial court imposes discovery sanctions which have the effect of precluding
a decision on the merits of a party's claims--such as by striking pleadings, dismissing an action, or
rendering default judgment--a party's remedy by eventual appeal is inadequate, unless the sanctions
are imposed simultaneously with the rendition of a final, appealable judgment.


Id. (emphasis in original) (citing TransAmerican Natural Gas Corp. v. Powell, 811 S.W.2d 913,
919 (Tex. 1991)). 


Deemed Admissions


Applicable Law

 "A trial court has broad discretion to permit or deny the withdrawal of deemed admissions."
Stelly v. Papania, 927 S.W.2d 620, 622 (Tex. 1996). Withdrawal or amendment of an admission
is permitted on a showing of good cause and a finding by the trial court that (1) the party relying on
the deemed admission will not be unduly prejudiced, and (2) presentation of the merits of the action
will be served thereby. Tex. R. Civ. P. 198.3; Wal-Mart Stores, Inc. v. Deggs, 968 S.W.2d 354, 356
(Tex. 1998); Stelly, 927 S.W.2d at 622. "'Good cause' is established when the failure to respond
is accidental or the result of mistake, rather than intentional or the result of conscious indifference." 
Deggs, 968 S.W.2d at 356; Stelly, 927 S.W.2d at 622. "Even a slight excuse will suffice, especially
when delay or prejudice to the opposing party will not result." Spiecker v. Petroff, 971 S.W.2d 536,
538 (Tex. App.- Dallas 1997, no writ); North River Ins. Co. of New Jersey v. Greene, 824 S.W.2d
697, 700 (Tex. App.- El Paso 1992, writ denied). The party seeking withdrawal of deemed
admissions has the burden to establish good cause. Webb v. Ray, 944 S.W.2d 458, 461 (Tex. App.-
Dallas 1997, no writ).

 In keeping with the applicable standards for the withdrawal of deemed admissions, the Texas
Supreme Court has concluded that "the purpose of the rules of civil procedure is to obtain a just, fair,
equitable and impartial adjudication of the litigants' rights under established principles of substantive
law." Stelly, 927 S.W.2d at 622; see Tex. R. Civ. P. 1. Further, the Supreme Court has stated that
"[t]he discovery rules were not designed as traps for the unwary, nor should we construe them to
prevent a litigant from presenting the truth." Stelly, 927 S.W.2d at 622; see Deggs, 968 S.W.2d at
357. Application of Law to Facts

 We recently dealt with the issue of good cause to withdraw deemed admissions in In re
Kellogg-Brown & Root, Inc., 45 S.W.3d 772 (Tex. App.- Tyler 2001, orig. proceeding). In Kellogg,
the relator's attorney testified that she did not receive a set of requests for admission purportedly
delivered to her firm on January 22, 2001 and that after searching, she was unable to locate this set
of discovery in her firm's files. She testified that she first learned of this discovery during a
telephone conversation with the attorney for the real party in interest on March 14, 2001. When she
received the requests for admission on March 15, 2001, she compiled responses and delivered then
to the real party in interest's attorney on March 19, 2001, fifty-six days prior to trial and only twenty-six days after they were originally due. We concluded that the relator had established the failure to
respond was an accident or a mistake, rather than intentional or the result of conscious indifference.

 We perceive no meaningful difference between the facts of Kellogg and those presented here. 
Assuming Dunahoo received requests for admission directed to Jackson on May 11, 2001, nothing
in the record shows that the failure to respond was intentional or the result of conscious indifference. 
Dunahoo testified that he does not recall receiving the requests for admission directed to Jackson on
May 11 and that after searching, he was unable to locate such discovery in the file. Dunahoo
obtained an extension until June 25 to file responses to the May 11 discovery. On June 25, he timely
filed responses and, on that same day, contacted Plaintiffs' attorney to inquire whether he had sent
a set of discovery to Jackson. On June 27, he received a set of discovery directed to Jackson. While
Dunahoo may have incorrectly believed that he had thirty days to respond to this discovery, the
record reflects that he filed responses on July 20, one day after Plaintiffs' attorney's letter concerning
these responses. Just as we found in Kellogg, these facts are similar to those cases where accident
or mistake, rather than intent or conscious indifference, has been established. See, e.g., Deggs, 968
S.W.2d at 357 (good cause shown when Wal-Mart did not receive requests directed to employee and
immediately moved to withdraw the deemed admissions upon learning that employee had failed to
respond); North River Ins. Co., 824 S.W. at 701 (good cause established where failure to respond
resulted from an inadvertent calendar diary error and counsel immediately advised opposing counsel
of the oversight and requested an extension); Employers Ins. of Wausau v. Halton, 792 S.W.2d 462,
466 (Tex. App.- Dallas 1990, writ denied) (finding good cause even though responses were fifty-five
days late where counsel was diligent in filing answers immediately after the missed deadline came
to his attention). Cf. Darr v. Altman, 20 S.W.3d 802, 808 (Tex. App.- Houston [14th Dist] 2000,
no pet) (good cause not established when party waited three months after receiving motion for
summary judgment to answer the requests or move to withdraw or amend the deemed admissions)

 Plaintiffs attempt to distinguish Kellogg by arguing that unlike the relator's attorney in
Kellogg, Dunahoo knew of both the existence of discovery to Jackson and the date the responses to
this discovery were due. Plaintiffs base this argument primarily on (1) Dunahoo's acknowledgment
that he received the transmittal letter along with two of the three sets of discovery on May 11, and
(2) the May 29 Rule 11 agreement wherein Dunahoo asked for an extension to respond to discovery
directed to all three defendants. (8) However, Dunahoo testified that he does not recall receiving
discovery directed to Jackson on May 11 and that he was unable to find such discovery after twice
searching the file. But even if Jackson did receive the discovery at issue on May 11, he testified that
it was inadvertently misplaced. The fact that Dunahoo obtained an extension to respond to the
discovery directed to Nacogdoches Nursing Center and Nacogdoches Healthcare Partners, L.P. and
that he timely filed such discovery on June 25 tends to show that Dunahoo's failure to timely respond
to the discovery sent to Jackson was not intentional or the result of conscious indifference. We
conclude that Dunahoo's testimony established that the failure to respond was an accident or a
mistake, especially in light of the fact that the responses were delivered to Plaintiffs 101 days prior
to jury selection and only twenty-five days after they were due. 

 Concerning prejudice to the opposing party, as noted above, the responses to the requests for
admission were delivered over three months prior to trial. In light of the time Plaintiffs had to assess
the responses and to take any appropriate action, we hold that they would not be unduly prejudiced
by the withdrawal of the deemed admissions. Compare Halton, 762 S.W.2d at 467 (finding a lack
of prejudice when the opposing party had almost a month to conduct additional discovery) with
Morgan v. Timmers Chevrolet, Inc., 1 S.W.3d 803, 807 (Tex. App.- Houston [1st Dist.] 1999, pet.
denied) (finding undue prejudice where party waited two years, until after the trial began, to try to
withdraw deemed admissions).

 With regard to whether the presentation of the merits would be served by amendment of the
deemed admissions, Jackson argues that the trial court's denial of her motion to withdraw deemed
admissions eliminated its ability to present any viable defense at trial and acted as a death penalty
sanction. We agree. By way of example, request numbers two, four and twelve asked Jackson to
admit:


. . .



 On May 2, 2000, you failed to provide services by sufficient number of direct care staff to
provide care to Lucille Parrish.



. . .



 On May2, 2000, you failed to provide adequate supervision to prevent accidents to Lucille Parrish.



. . .

 


 Prior to May 2, 2000, it was forseeable to you that Claude Linthicum could commit an
assualt, such as that experienced by Lucille Parrish.


. . .


A matter that is "deemed admitted" is conclusively established against the admitting party unless the
court permits withdrawal or amendment of the admission. Tex. R. Civ. P. 198.3. Having reviewed
Plaintiffs' allegations, we conclude that the deemed admissions at issue here would vitiate any
substantive defense Jackson might have. In Stelly, the Supreme Court stated: 


 The primary purpose of [Rule 198] is to simplify trials by eliminating matters about which there is no
real controversy, but which may be difficult or expensive to prove. It was never intended to be used
as a demand upon a plaintiff or defendant to admit that he had no cause of action or ground of defense. 


Stelly, 927 S.W.2d at 622 (quoting Sanders v. Harder, 148 Tex. 593, 227 S.W.2d 206, 208 (1950)).

Because the "ultimate purpose of discovery is to seek the truth," Stelly, 927 S.W.2d at 622, we
conclude that the presentation of the merits of the case would be served by withdrawal or amendment
of Jackson's deemed admissions. Halton, 792 S.W.2d at 467; see also Powell, 811 S.W.2d at 918
("Sanctions which are so severe as to preclude presentation of the merits of the case should not be
assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of
discovery under the rules").

 Plaintiffs contend that Jackson is not prevented from presenting a defense because the matters
deemed admitted are also contained in a report compiled by the Texas Department of Human
Services after investigating the injuries sustained by Parrish. While it may be true that some of the
findings in the Department's report overlap with the deemed admissions, we note that a matter that
is "deemed admitted" is conclusively established against the admitting party unless the court permits
withdrawal or amendment of the admission. We also note that the primary purpose of Rule 198 is
to eliminate matters "about which there is no controversy." Stelly, 927 S.W.2d at 622. In her
petition, Jackson points out that she has filed a general denial and that she contests almost all of the
issues encompassed within the requests for admission.


Conclusion


 Based on the foregoing, we conclude that the trial court abused its discretion in denying
Jackson's Motion to Withdraw and Substitute Deemed Admissions and that Jackson lacks an
adequate remedy by law. Accordingly, we conditionally grant the writ of mandamus. Because we
are confident that the trial court will act promptly to (1) vacate its order of August 16, 2001 denying
Jackson's Motion to Withdraw and Substitute Deemed Admissions, and (2) enter an order allowing
Jackson to withdraw and amend her deemed admissions, the writ will not issue unless the trial court
fails to act accordingly within five days herefrom. 



Opinion delivered September 21, 2001.

Panel consisted of Davis, C.J., Worthen, J., and Griffith, J.


(DO NOT PUBLISH)
1. Jean Consford, individually and as representative of the Estate of Lucille Parrish, Darnese Parrish, and
Robert Parrish.
2. The record appears to indicate that the original petition was filed in November, 2000, while the third
amended petition was filed in June, 2001. 
3. Besides Westward Trails and Jackson, Plaintiffs have sued the following owners, operators, and partners
of Westward Trails: WT Manor, Inc., Paramount WT Manor, Inc., Paramount Healthcare Company, Westward
Trails, Inc., Westward Healthcare Partners, L.P., and Nacogdoches Nursing Center, L.L.C. Plaintiffs have also sued
the director of nurses at Westward Trails, Pamela Bray.
4. In her petition, Jackson states that "Nacogdoches Healthcare Partners, L.P." apparently refers to
"Westward Healthcare Partners, L.P." 
5. Dunahoo's affidavit was attached to Jackson's Response to Plaintiffs' Motion to Deem Admissions and,
Alternatively, Motion to Withdraw and Substitute Deemed Admissions.
6. The record is unclear as to when the requests for disclosure were served. Apparently, they were served at
the same time the first set of discovery was served. 
7. The only evidence that Plaintiffs, in fact, served requests for admission directed to Jackson in May, 2001
is Plaintiffs' attorney's affidavit. In her petition for writ of mandamus, Jackson argues that good cause for the
withdrawal of the deemed admissions was shown because Dunahoo's affidavit negated Plaintiff's attorney's affidavit
and defeated the presumption of receipt under Texas Rule of Civil Procedure 21a. Jackson also contends that in
light of the evidence that Dunahoo did not receive discovery directed to Jackson until June 27, the responses to the
requests for admission filed on July 20 were, in fact, timely. While we find some merit in Jackson's argument in this
regard, we will assume that Plaintiffs served requests for admission directed to Jackson in May, 2001. Because we
conclude, as will be explained in detail below, that Jackson established good cause to withdraw the deemed
admissions even if she received the requests on May 11, we need not address Jackson's argument concerning lack of
service. 
8. While it does not form the sole basis for our conclusion, we note that Dunahoo testified that his secretary
prepared the Rule 11 agreement and that another attorney signed the letter after he left on vacation.