**In re Lynda Diana ADKINS and
Maezel Powell, Relators.**

No. 2–01–365–CV.

Court of Appeals of Texas,
Fort Worth.

March 5, 2002.

Amis & Bell, Dan D. McClain, Arlington, Johnson & Sylvan and Stephen D. McKimmey, Dallas, for Relators.

Mark J. Carroll, Dallas, for Real Party In Interest.

Panel A: CAYCE, C.J.; DAY and DAUPHINOT, JJ.

## OPINION

SAM J. DAY, Justice.

### I. INTRODUCTION

Relators Lynda Diana Adkins and Maezel Powell filed a petition for writ of mandamus with this court challenging the trial court's order imposing discovery sanctions against them. We deny relators' petition in part and conditionally grant the petition in part.

### II. FACTUAL AND PROCEDURAL BACKGROUND

On May 11, 1997, Jaime Lynn Black Henderson's dog ran into the street to chase real party in interest Steven Willis who was riding his bicycle. Willis lost control of his bicycle, fell off of it, and suffered injuries.

Willis filed a personal injury lawsuit against Henderson and relators on May 7, 1999, in the 141st District Court, Tarrant County, Texas, the Honorable Paul Enlow presiding. Willis alleged that relators were responsible for the actions of the dog, which was "kept, owned or maintained" by Henderson because they "knew or should have known that the dog regularly ran free into the street to chase cars, bicycles and pedestrians.... [Relators] resided at or near the residence which they jointly owned and rented to [Henderson]." Willis later amended his pleadings to add a strict liability cause of action:

Defendants are strictly liable for Plaintiff's injuries and damages because:

1. The subject domesticated dog was of vicious, dangerous or mischievous propensities;

2. The Defendants as owners or keepers of the dog had knowledge, either actual or constructive of its vicious, dangerous or mischievous propensities; and,

3. Plaintiff's injuries and damages resulted from the said viciou[s], dangerous or mischievous propensities.

During the course of discovery, relators provided Willis with the names of persons with knowledge of relevant facts in response to a request for disclosure. *See* TEX.R. CIV. P. 194.2(e). Jerry and Linda Cosby were included on the list. Relators were also requested to produce witness statements. *See* TEX.R. CIV. P. 194.2(i). Accordingly, relators produced a transcript of a recorded statement of relator Lynda Adkins.

About two years later, relator Powell took the deposition of Henderson. During cross-examination, Henderson testified that she had given a recorded statement after the accident. Before Henderson's deposition, relators had not informed Willis about the statement or made it available to him. On June 14, 2001, Willis filed a motion for sanctions against relators,

complaining only of their failure to produce Henderson's recorded statement.

On June 15, 2001, Willis filed notices of intent to take the depositions of insurance claims representatives he had contact with following the accident, including Kelly Obey, Ann Seabolt, Paul Gilson, and Nancy Clifford. The depositions were noticed for June 22, 2001, but did not take place as scheduled. Instead on June 22, relators produced a transcript of a recorded statement taken of Julie Doty on July 31, 1998, and a transcript and recorded statement of Willis, which was taken in the presence of his attorney on November 4, 1998. Relators also produced a copy of the front and back of envelopes that contained written notes of the attempts to record statements of relator Powell on November 25, 1997, and Henderson on July 18, 1998. The envelopes contained blank tapes of the attempted recorded statements of Powell and Henderson; the tape recorder allegedly malfunctioned and did not record the oral statements. On June 26, 2001, relators also produced a portion of a redacted "Investigation log" that included notes taken during Doty's recorded statement as well as the names of witnesses who were present when Doty gave her statement. The log stated that Jerry Cozby and "the Graham's" were present.

On July 6, 2001, relators made Nancy Clifford available for deposition. She is the insurance claims representative involved in the case. During the deposition, relators' attorney objected to various questions asked by Willis's attorney, claiming they went beyond the scope of discovery for the deposition. Relators' attorney instructed Clifford not to answer the questions until she had counsel present. The deposition was terminated.

Following the failed deposition, Willis filed an amended motion for sanctions, complaining of relators' failure to reveal the names of Cozby and "the Graham's" as persons with knowledge of relevant facts; failure to produce the statements of witnesses as requested; and failure of Clifford to answer questions during her deposition. After a hearing, the trial court granted Willis's amended motion for sanctions. The trial court found that relators, through the acts of their insurer, "Farmers Insurance Group," abused the discovery rules by resisting discovery without "good cause." The trial court ordered relators to pay $1,000 in attorney's fees and the $144 court reporter's fee. The court also ordered that Willis

> shall have a jury instruction upon the trial of this cause, if any, to presume the subject dog had vicious, dangerous or mischievous propensities, abnormal to its class, [relators] allowed the subject dog to be kept on their property, and [they] had knowledge, either actual or constructive, of the dog's vicious, dangerous or mischievous propensities.

On November 2, 2001, the trial court stayed the sanctions order with respect to the monetary sanction to allow relators to seek mandamus relief.

### III. RELIEF REQUESTED

On November 20, 2001, Relators filed a petition for writ of mandamus in this court and a motion for emergency temporary relief, requesting a stay of the case pending review of their petition. The motion was granted on November 29, 2001.

Relators assert in their petition that the trial court abused its discretion in finding that they abused the discovery process and in entering the jury instruction sanction order. Specifically with regard to the instruction, relators complain that the trial court abused its discretion by giving Willis the jury instruction on the vicious propensities of the dog, which they claim amounts to a death penalty sanction. With respect

to relators' claim that the trial court abused its discretion in finding that relators' abused the discovery process and in ordering relators to pay attorney's fees and the cost of the reporter's record, we deny relators' petition. *See* Tex.R.App. P. 52.8(a). We will address relators' argument regarding the jury instruction.

## IV. STANDARD OF REVIEW

■ In deciding whether a writ of mandamus is appropriate, we recognize that mandamus will issue only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy at law. *In re Daisy Mfg. Co.*, 17 S.W.3d 654, 658 (Tex.2000) (orig.proceeding). A trial court clearly abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (orig.proceeding).

■ With respect to the resolution of factual issues or matters committed to the trial court's discretion, we may not substitute our judgment for that of the trial court unless the relator establishes that the trial court could reasonably have reached only one decision and that the trial court's decision is arbitrary and unreasonable. *Id.* at 839–40. This burden is a heavy one. *Canadian Helicopters Ltd. v. Wittig*, 876 S.W.2d 304, 305 (Tex.1994) (orig.proceeding).

■ Our review is much less deferential with respect to a trial court's determination of the legal principles controlling its ruling because a trial court has no discretion in determining what the law is or in applying the law to the facts. *Walker*, 827 S.W.2d at 840. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion and may result in mandamus. *Id.*

■ Generally, the right to appeal the imposition of a particular discovery sanction is an adequate remedy precluding mandamus relief. *Braden v. Downey*, 811 S.W.2d 922, 928 (Tex.1991) (orig.proceeding). An appellate remedy is not inadequate merely because it might involve more delay or cost than mandamus. *In re Ford Motor Co.*, 988 S.W.2d 714, 721 (Tex. 1998) (orig.proceeding). However, a party will not have an adequate remedy by appeal where the party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's discovery order. *Id.; Walker*, 827 S.W.2d at 843. It is not enough to show merely the delay, inconvenience, or expense of an appeal; rather, the relator must establish the effective denial of a reasonable opportunity to develop the merits of his or her case, so that the trial would be a waste of judicial resources. *Walker*, 827 S.W.2d at 843.

■ Discovery sanctions that terminate or inhibit the presentation of the merits of a party's claims are authorized by rules 215.2 and 215.3. Tex.R. Civ. P. 215.2(b)(1)-(5), 215.3. The effect of such sanctions is to adjudicate claims or defenses, not on their merits, but on the manner in which a party or his attorney has conducted discovery. *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex.1991) (orig.proceeding). While the sanctions in *TransAmerican* resulted in the pleadings being struck, "[w]henever a trial court imposes sanctions *which have the effect of adjudicating a dispute,* whether by striking pleadings, dismissing an action or rendering a default judgment, but which do not result in rendition of an appealable judgment, then the eventual remedy by appeal is inadequate." *Id.* at 919–20 (emphasis added).

■ Relators contend that the jury charge presumptions imposed by the trial

court constitute the equivalent of "death penalty" sanctions because the jury charge effectively amounts to an automatic assessment of liability against relators. Relators claim the trial court's action basically terminates their opportunity to present a meaningful defense at trial to the strict liability cause of action alleged by Willis. We agree. Because the complained of presumption effectively proves Willis's strict liability cause of action without permitting relators to introduce evidence disputing the elements of Willis's case, relators do not have an adequate remedy by appeal regarding this part of the trial court's order. *See id.* Thus, mandamus review is appropriate.

## V. ABUSE OF DISCRETION

■ We cannot grant mandamus relief, however, unless we determine that in ordering sanctions the trial court clearly abused its discretion. *Daisy Mfg. Co.,* 17 S.W.3d at 658; *In re Colonial Pipeline Co.,* 968 S.W.2d 938, 941 (Tex.1998) (orig.proceeding). Relators contend the jury charge sanction constitutes an abuse of discretion because the sanction does not meet the requirements established by the Texas Supreme Court and because the "presumptions" in the charge are not properly given to the jury.

■ The imposition of discovery sanctions must be "just." TEX.R. CIV. P. 215.2(b); *TransAmerican,* 811 S.W.2d at 917. Whether an imposition of sanctions is "just" is measured by two standards: (1) a direct relationship must exist between the offensive conduct and the sanctions imposed; and (2) the sanctions must not be excessive. *TransAmerican,* 811 S.W.2d at 917. Under the first standard, the sanctions must be directed against the abuse and toward remedying the prejudice caused the innocent party. *Id.* Under the second standard, the punishment should not be excessive; the punishment should fit the crime:

> A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes. It follows that courts must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance.... Sanctions which are so severe as to preclude presentation of the merits of the case should not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules.

*Id.* at 917–18.

■ Sanctions that terminate or inhibit the presentation of the merits of a party's claim are authorized by rule 215. Such severe sanctions are sometimes necessary to prevent an abusive party from thwarting the administration of justice by concealing the merits of a case. *Braden,* 811 S.W.2d at 929. However, such sanctions must be reserved for circumstances in which a party has so abused the rules of procedure, *despite imposition of lesser sanctions,* that the party's position can be presumed to lack merit and it would be unjust to permit the party to present the substance of that position before the court. *Id.*

■ The record must also reflect that the court considered the availability of lesser sanctions. *Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 852–53 (Tex.1992). Case determinative sanctions may be imposed in the first instance only in exceptional cases when they are clearly justified and it is fully apparent that no lesser sanctions would promote compliance with the rules. *GTE Communications Sys. Corp. v. Tanner,* 856 S.W.2d 725, 729–30 (Tex.1993) (orig.proceeding).

Here, the trial court's order stated it had considered "relatively less stringent sanctions, however, under the circumstances, lesser sanctions would not fully promote compliance, deterrence, and discourage further abuse." The court did not explain its reasons, and the record does not indicate why lesser sanctions would not promote compliance or discourage further abuse. We give no deference to such unsupported conclusions. *See GTE Communications*, 856 S.W.2d at 729–30.

Relators have made a credible showing that the trial court abused its discretion by imposing a sanction that was not "just" because it was excessive. The sanction effectively precludes relators from asserting any defense at trial to the strict liability cause of action, without a showing that less severe sanctions would have promoted compliance with the discovery rules. We hold the trial court abused its discretion in sanctioning relators by entering a jury instruction that would require the jury to "presume the subject dog had vicious, dangerous or mischievous propensities, abnormal to its class, [relators] allowed the subject dog to be kept on their property, and [they] had knowledge, either actual or con-structive of the dog's vicious, dangerous or mischievous propensities." In light of our holding, we do not address whether the jury instruction amounted to an improper presumption.

## VI. CONCLUSION

Because the trial court abused its discretion in imposing a jury instruction that amounted to a death penalty sanction against relators without first attempting lesser sanctions to prevent further discovery abuse, we conditionally grant relators' petition for writ of mandamus to the extent that it challenges the severity of the trial court's jury instruction sanction order. We are confident the trial court will vacate its order in accordance with this opinion. We instruct our clerk to issue the writ only if the trial court fails to comply with this opinion. We deny the remainder of relators' petition.